NOT DESIGNATED FOR PUBLICATION

No. 114,974

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JARMANE LOGAN,
*Appellant*,

v.

REX PRYOR,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed August 5, 2016. Affirmed.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Sherri Price*, of Lansing Correctional Facility, for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

*Per Curiam:* Prisoner Jarmane Logan contends the district court should have taken evidence on his habeas corpus petition instead of summarily dismissing it. Logan contends that the loss of his minimum-wage job in prison was a result of a 60-day disciplinary action for use of a prohibited stimulant. In opposition, the prison officials argue that Logan has failed to show the loss of any constitutionally protected liberty interest and the district court properly dismissed his petition. Because Logan's petition plainly discloses that he lost his job before any disciplinary action was taken, we agree

1

with the district court that he has failed to show the loss of a constitutionally protected interest. We hold the court properly dismissed his petition.

*A positive urinalysis leads to a loss of privileges.*

The disciplinary report tells the story:

> "On 3-30-15 Inmate Logan reported to work on his scheduled 1430-0100 shift at Zephyr Products. Due to suspicion of being under the influence of an unknown substance, Zephyr Products supervisor, Mr. James, transported Logan to their medical facility, OHS Kansas City, Kansas, and had a UA performed. LCF staff were notified of the UA results on 4-6-15 which were positive for the drug K-2 spice."

K-2 is a synthetic form of marijuana. Consequently, prison officials charged Logan with violating the prison rules that prohibit inmates from using unauthorized stimulants.

Following a hearing, a hearing officer convicted Logan of using K-2. As a sanction for that conviction, the hearing officer restricted Logan's privileges for 60 days.

After losing his appeal to the secretary of corrections, Logan filed this K.S.A. 2015 Supp. 60-1501 petition. He attached to his petition six pages of handwritten allegations in which he alleged his due process rights were violated because: (1) prison officials violated various regulations in charging him; and (2) the evidence did not support his conviction.

The district court summarily dismissed Logan's petition, holding that Logan's sanction did not rise to the level of the deprivation of life, liberty, or property that is necessary to state a valid claim for a procedural due process violation.

2

*Here is the law we will follow.*

This court will affirm the summary dismissal of Logan's petition only if, "on the face of the petition, it can be established that [Logan] is not entitled to relief, or if, from undisputed facts, or from incontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." *Johnson v. State*, 289 Kan. 642, 648-49, 215 P.3d 575 (2009); K.S.A. 2015 Supp. 60-1503(a).

To avoid summary dismissal of his petition, Logan had to allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648. In deciding if Logan has satisfied this burden, we consider de novo whether the facts alleged in Logan's petition, when accepted as true, and all their inferences state a claim not only on the theories set forth by Logan, but on any possible theory. *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007). Specifically, our task is to determine whether Logan has stated a valid claim of deprivation of his constitutional due process rights. This is, of course, a question of law subject to unlimited review by this court. 37 Kan. App. 2d at 240.

Deciding whether Logan stated a valid claim for a violation of his procedural due process rights involves two steps. First, we determine whether the warden deprived Logan of life, liberty, or property. If not, our analysis stops there. If so, then this court determines "the extent and nature of the process which is due." *Hogue*, 279 Kan. at 850-51.

The parties dispute whether we get past the first step under the facts of this case. Citing *Murphy v. Anderson*, 260 Kan. 589, 921 P.2d 1225 (1996), the district court held, in part, that Logan did not make it past this step because the restriction of privileges is not the type of significant deprivation that implicates a constitutional liberty interest. Logan does not challenge this holding. An issue not briefed by the appellant is deemed waived

3

and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Logan insists that he stated a valid claim for deprivation of a property interest based on his statement in his petition that he would not get his job back. According to Logan, as a direct and mandated consequence of his disciplinary conviction, the warden removed him from his minimum-wage, private-industry job. Logan likens this to the imposition of a fine, which our courts consistently recognize to implicate a property interest under this first step of the due process inquiry. See *Washington*, 37 Kan. App. 2d at 240.

The warden responds that even if the loss of a job satisfied the first step, it does not matter because no evidence indicates that Logan was removed from his private industry job *because of* his disciplinary conviction. In support, the warden points out that Logan's discussion of his job loss in his petition clearly predates the disciplinary hearing.

Even accepting Logan's allegations in his petition as true, Logan cites no authority to support his contention, and nothing in the record supports the conclusion that the loss of his job was a "mandated" sanction or result of his disciplinary conviction. Neither Logan's job loss, nor the restriction of his privileges for 60 days, satisfies the first step of the due process inquiry.

Not stopping there, Logan argues that even if we find his job loss was not a "taking of property" for due process purposes, summary dismissal was still inappropriate because he alleged shocking and intolerable conduct or continuing mistreatment constituting a significant deprivation of his constitutional rights. In support, he points to his allegations of various actions of prison officials, which he claimed occurred during the disciplinary proceeding.

4

He does, however, cite a Kansas Supreme Court ruling that a government agency may not violate its own rules and that such violations render the agency's order unlawful. *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. 398, Syl. ¶ 1, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973). Logan argues that such conduct, if true, was shocking to the level requiring an evidentiary hearing.

Logan is referring to the timing of the disciplinary action. The record reflects that Logan's violation—testing positive for a stimulant—occurred on March 30, 2015. The officer made the written disciplinary report on April 6, 2015, and served it on Long on April 29, 2015. This is beyond the time provided for in the Department's regulations, which require such reports to be served within 48 hours after it is issued. See K.A.R. 44-13-201(a).

Indeed, Logan's hearing on the complaint was not held until May 14, 2015. K.A.R. 44-13-401(a), however, requires disciplinary hearings to be held not more than 7 days after the disciplinary report is served on the inmate. It appears from Logan's petition that he was moved to "max" on March 30, 2015, and advised of the positive drug test. He remained in the "max" unit until he was served with the disciplinary report.

Logan's claim concerning the delay in his disciplinary hearing is not persuasive. In prison disciplinary proceedings, "[d]ue process '"is not a technical conception with a fixed content unrelated to time, place, and circumstances.'" [Citations omitted.]" *Hogue v. Bruce*, 279 Kan. 848, 851, 113 P.3d 234 (2005). Courts have recognized that a prisoner has limited due process rights during a disciplinary proceeding, which include:

> "'an impartial hearing, a written notice of the charges to enable inmates to prepare a defense, a written statement of the findings by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence.' [Citation omitted.]" *Hogue*, 279 Kan. at 851.

Finally, Logan's petition focuses on his detention in the maximum-security unit but fails to allege that the conditions while in the "max" unit were shocking. A protected liberty interest may arise when prison authorities impose a restraint on a prisoner's already quite-limited freedom, and the restraint is atypical and a significant hardship on the inmate in relation to the ordinary incidents of prison life. See *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

Logan does not complain in his petition about any conditions or restrictions imposed on him while in the "max" unit. In the absence of any allegations of an atypical or significant hardship, his claims regarding an improper transfer fail to state a justiciable claim under K.S.A. 2015 Supp. 60-1501.

After considering all of this, we cannot see where Logan has stated a valid due process claim based on procedural errors at this disciplinary hearing. Indeed, he admits in his petition that he had lost his job before he was sanctioned.

We affirm the district court.