NOT DESIGNATED FOR PUBLICATION

No. 117,792

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSHUA ROBERTSON,
*Appellant*,

v.

DALE CALL, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed April 13, 2018.
Affirmed.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellant.

*Joni Cole*, legal counsel, of El Dorado Correctional Facility, for appellees.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

PER CURIAM: This case is before us on appeal for the third time. Joshua Robertson, an inmate of the El Dorado Correctional Facility (EDCF) who is assigned to the administrative segregation unit, is once again appealing the dismissal of his K.S.A. 60-1501 petition. On appeal, Robertson claims that he was denied face-to-face visits with his rabbi of the Messianic Jewish faith while other inmates in administrative segregation were granted access to religious advisors of the Christian faith. By doing so, Robertson argues that the EDCF was attempting to advance the Christian faith at the peril of his faith, in violation of the Establishment Clause of the First Amendment to the United States Constitution. After considering evidence and making findings of fact, the district

court determined that Robertson's rights under the Establishment Clause have not been violated, and the district court dismissed Robertson's petition in its entirety. For the reasons stated herein, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

For a complete recitation of the facts and procedural history, see *Robertson v. Call*, No. 114,122, 2016 WL 4413321 (Kan. App. 2016) (unpublished opinion) (*Robertson II*), and *Robertson v. Call*, No. 112,132, 2015 WL 326677 (Kan. App. 2015) (unpublished opinion), *rev. denied* 301 Kan. 1047 (2015) (*Robertson I*). Relevant to this appeal, on February 21, 2014, Robertson filed a petition for writ of habeas corpus pursuant to K.S.A. 60-1501, alleging numerous complaints about his confinement at the EDCF, including a claim that the prison violated his First Amendment rights under the Free Exercise Clause and the Establishment Clause by denying him face-to-face visits with his rabbi. Specifically, Robertson argued that the prison violated his rights in the way it applied EDCF General Order 16-107 to him. This order stated, in relevant part:

"I.C.1. Inmates in administrative and disciplinary segregation shall visit using the video visitation booths in one-hour time blocks. . . .

. . . .

"II.A.2. Attorneys, clergy, and other persons having a statutory right of privileged communication, with the exception of spouses, shall be provided a space for private consultation. Security measures shall be permitted to include visual monitoring by camera or in person. Sound monitoring shall not be conducted."

Under the general order, inmates in segregation are permitted visitation using video visitation booths as opposed to face-to-face contact. However, the policy includes an exception for some visitors with a statutory right of privileged communication with the inmate. Robertson's petition claimed that the policy exception was being selectively

2

enforced by the prison to permit attorneys and some clergy to have private consultation with inmates in segregation while denying him face-to-face meetings with his rabbi.

On June 24, 2014, the district court summarily denied Robertson's petition in its entirety. In *Robertson I*, this court affirmed in part, modified in part, reversed in part, and remanded for appointment of counsel and an evidentiary hearing on Robertson's claims under the Free Exercise Clause and Establishment Clause. 2015 WL 326677, at *5-7.

On the first remand, the district court held two evidentiary hearings. At the first hearing on March 25, 2015, Robertson's rabbi, Richard Segal, and Robertson himself testified. At the second hearing on June 1, 2015, an EDCF administrative assistant, a chaplain employed by the EDCF, and Warden James Heimgartner testified. The testimony at the second hearing established that in March 2015, the EDCF changed its visitation policy to forbid face-to-face visits for all inmates in segregation, regardless of the circumstances; in other words, the visitation policy no longer permitted any exceptions for attorneys, clergy, or others with a statutory right of privilege.

On June 15, 2015, the district court filed a written journal entry and order of judgment dismissing Robertson's First Amendment claims. The written order rejected Robertson's claims under the Free Exercise Clause, but the order did not address the claims under the Establishment Clause.

In the second appeal, this court found that the district court correctly dismissed Robertson's Free Exercise Clause claim because he failed to establish that his freedom to exercise his religion was substantially burdened by the EDCF. 2016 WL 4413321, at *5. But even though Robertson's appellate brief raised no issue under the Establishment Clause, this court decided that it was necessary to again remand the case for the district court to fully consider Robertson's claim under the Establishment Clause. 2016 WL 4413321, at *5-6.

On remand for the second time, the district court ordered the parties to brief the Establishment Clause issue. Robertson's trial brief acknowledged that in March 2015, EDCF changed its policy to no longer allow attorneys to have face-to-face visitation with inmates in segregation. On April 12, 2017, the district court filed a written order setting forth findings of fact and legal analysis on Robertson's claim under the Establishment Clause. The written order included the following findings of fact:

"1. The present policy at issue prohibits *all* face to face contact between *segregation* inmates and their *own* religious advisors, attorneys, and other nonprison personnel. The restriction applies to religious persons of *all* faiths.

"2. The prison employs a qualified Chaplain who attended Bible College and Seminary to counsel inmates (including those in segregation) but only at the inmate's request. Counseling is not mandatory and only occurs at the specific request of the inmate.

"3. Pursuant to a planned event, a Christian group called Bill Glass Ministries, was allowed to walk through the segregation unit under escort and pass out Bible tracts to those who requested it. They did not meet with the segregation inmates face to face. In the past, this group was denied access due to security reasons. This procedure is not a regular event.

"4. No other religious group has ever requested (or been denied) a similar opportunity to pass out religious materials in the segregation unit.

"5. Petitioner Robertson remains in the segregation unit at his own request.

"6. The video link utilized by EDCF for contact between segregation inmates and their attorneys and/or religious advisors consists of a 'video booth' containing a screen so the parties may see each other, a telephone handset and an ELMO video display projector so the parties may jointly view various documents or texts.

"7. The segregation unit typically houses 'the worst of the worst' and face to face contact heightens the risk of contraband exchange or serious security and safety concerns for the visitor and staff should some type of incident occur. Additionally, any person to person contact requires inmates to be strip searched afterwards consuming additional staff time and causing increased surveillance."

Notably, the district court ruled exclusively on whether the prison's *new* policy, prohibiting all face-to-face visits without exception, violated the Establishment Clause. In regard to the previous policy exception, the district court specifically stated: "The present prison policy supersedes prior policy and is the only one that [is] considered here. The Court will not speculate or rule on the validity of a policy no longer in effect."

Following the district court's findings of fact, the court considered four distinct Establishment Clause tests. The district court initially found that the prison's visitation policy with inmates in the segregation unit was consistent with the *Lemon* test, based on the United States Supreme Court ruling in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). The district court went on to rule that the policy also passed the coercion, endorsement, and neutrality tests, based on other United States Supreme Court decisions. The district court ultimately found that Robertson's rights under the Establishment Clause have not been violated and dismissed his K.S.A. 60-1501 petition in its entirety. Robertson timely appealed.

ANALYSIS

On appeal, Robertson argues that the EDCF violated his rights under the Establishment Clause in the manner that it has applied its visitation policy with inmates in the segregation unit. Robertson's appellate brief acknowledges that in March 2015, EDCF changed its policy to no longer allow attorneys to have face-to-face visitation with inmates in segregation. However, Robertson asserts that EDCF selectively enforced the original policy exception for visitation with inmates in segregation, and "[i]t was only after this fact was pointed out during the first evidentiary hearing that EDCF changed their execution of general order 16-107 to also limit attorney visits to video conference booths." Robertson's entire argument on appeal is that the EDCF selectively enforced the previous policy exception for face-to-face visits with inmates in the segregation unit in

5

violation of the Establishment Clause, under the test set forth by the United States Supreme Court in *Lemon*.

EDCF argues that the prison authorities did not violate Robertson's rights under the Establishment Clause because the evidence presented did not support the claim under any test applied. Significantly, EDCF's brief argues only that the *new* prison policy does not violate the Establishment Clause. EDCF goes on to argue that the prison policy concerning visitation with segregated inmates does not violate the Establishment Clause under the *Lemon* test, the coercion test, the endorsement test, and the neutrality test, based on United States Supreme Court decisions.

To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). An appellate court reviews a district court's decision on a K.S.A. 60-1501 petition to determine whether the district court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. The district court's conclusions of law are subject to de novo review. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004).

Similarly, we have unlimited review as to whether Robertson's constitutional rights have been violated. See *Johnson*, 289 Kan. at 649. As Robertson is claiming a constitutional violation in his habeas proceedings, he carries the burden of proof. See *Johnson v. Stucker*, 203 Kan. 253, 260, 453 P.2d 35, *cert. denied* 396 U.S. 904 (1969).

As a preliminary matter, we point out some significant problems in the manner in which Robertson is presenting his arguments on appeal. The district court found that EDCF's visitation policy with inmates in the segregation unit did not violate Robertson's rights under the Establishment Clause in accordance with the United States Supreme Court's test in *Lemon*. However, the district court went on to rule that the policy also

6

passed the coercion, endorsement, and neutrality tests, based on other United States Supreme Court decisions. On appeal, Robertson argues only that the prison policy violates his rights under the Establishment Clause in accordance with the *Lemon* test. However, Robertson fails to challenge the district court's rulings under the coercion, endorsement, and neutrality tests.

When a district court provides alternative bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of each alternative basis on appeal, the appellate court may decline to address the appellant's challenge to the district court's ruling. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280, 225 P.3d 707 (2010). Because Robertson's appeal fails to challenge the district court's rulings that the prison policy concerning visitation with inmates in segregation does not violate the Establishment Clause under the coercion, endorsement, and neutrality tests, he has abandoned any claim that the district court erred in making these alternative rulings, and we could affirm the district court's judgment on this basis alone.

Moreover, Robertson's entire argument on appeal is that the EDCF applied the previous policy exception for face-to-face visits in violation of the Establishment Clause. However, the undisputed testimony at the evidentiary hearing established that EDCF changed its policy on visitation to the segregation unit after Robertson's petition was filed. Based on the evidence, the district court made the following factual finding: "The present policy at issue prohibits *all* face to face contact between *segregation* inmates and their *own* religious advisors, attorneys, and other nonprison personnel. The restriction applies to religious persons of *all* faiths." Robertson does not challenge this factual finding on appeal. Based on this factual finding, the district court's written order stated: "The present prison policy supersedes prior policy and is the only one that [is] considered here. The Court will not speculate or rule on the validity of a policy no longer in effect."

On appeal, Robertson makes no argument regarding the constitutionality of the new prison policy concerning visitation of inmates in segregation. Because Robertson makes no argument regarding the constitutionality of the new policy, which was the basis of the district court's ruling, he has waived any argument that the district court erred in finding the new policy constitutional. See *Kingsley v. Kansas Dept. of Revenue,* 288 Kan. 390, 395, 204 P.3d 562 (2009) (holding that an issue not briefed by the appellant is deemed waived or abandoned).

Despite these procedural problems in the manner in which Robertson has presented his arguments on appeal, we will attempt to briefly address the merits of the issue at hand. As previously stated, Robertson does not challenge the district court's factual findings set forth in the court's April 12, 2017 written order. We conclude that the factual findings are supported by substantial competent evidence presented at the hearing, and we will proceed to address the district court's legal conclusion that Robertson's rights under the Establishment Clause have not been violated.

Under the Establishment Clause, "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause applies to the states through the Fourteenth Amendment. *Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290, 301, 120 S. Ct. 2266, 147 L. Ed. 2d 295 (2000). The Establishment Clause prohibits three forms of state involvement in religious functions: (1) sponsorship, (2) financial support, and (3) active involvement. *Walz v. Tax Commission*, 397 U.S. 664, 668, 90 S. Ct. 1409, 25 L. Ed. 2d 697 (1970). Simply put, the Establishment Clause prevents the government from advancing one religion over another. *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 335, 107 S. Ct. 2862, 97 L. Ed. 2d 273 (1987).

While the United States Supreme Court has addressed a plethora of Establishment Clause issues, in doing so the Court has applied a variety of tests. See, e.g., *Lee v. Weisman*, 505 U.S. 577, 587, 592-96, 112 S. Ct. 2649, 120 L. Ed. 2d 467 (1992)

8

(applying the coercion test); *Allegheny County v. Greater Pittsburgh ACLU*, 492 U.S. 573, 592-94, 109 S. Ct. 3086, 106 L. Ed. 2d 472 (1989) (applying the endorsement test); *Lemon*, 403 U.S. at 612-13 (applying the *Lemon* test). In one instance, the Court decided an Establishment Clause issue without even applying a formal test. See *Marsh v. Chambers*, 463 U.S. 783, 103 S. Ct. 3330, 77 L. Ed. 2d 1019 (1983).

On more than one occasion, this court has answered an Establishment Clause question using the *Lemon* test. See, e.g., *Purdum v. Purdum*, 48 Kan. App. 2d 938, 948, 301 P.3d 718 (2013); *In re Tax Exemption Application of Westboro Baptist Church*, 40 Kan. App. 2d 27, 44, 189 P.3d 535 (2008), *In re R.M.*, No. 115,945, 2017 WL 2021925, at *6 (Kan. App. 2017) (unpublished opinion). In any event, Robertson's argument on appeal is based entirely on the *Lemon* test. Indeed, throughout his brief, Robertson never mentions any of the other tests. For that reason, even though the district court and the State analyzed tests other than the *Lemon* test, our decision today will only address the *Lemon* test.

Under the *Lemon* test, as originally formulated, a statute must meet three specific requirements to satisfy the First Amendment:  (1) The statute must have a secular legislative *purpose*; (2) the statute's principal or primary *effect* neither advances nor inhibits religion; and (3) the statute must not foster an *excessive government entanglement with religion*. 403 U.S. at 612-13. All three prongs must be met to avoid a violation of the Establishment Clause. See *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S. Ct. 2573, 96 L. Ed. 2d 510 (1987) ("State action violates the Establishment Clause if it fails to satisfy *any* of these prongs." [Emphasis added.]).

Over the years, the United States Supreme Court has provided clarification of this test. In *Agostini v. Felton*, 521 U.S. 203, 218, 232-33, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997), the Court folded the entanglement inquiry into the primary effect inquiry, thereby reducing the test to the "purpose" and "effect" prongs; see also *Zelman v. Simmons-*

9

*Harris*, 536 U.S. 639, 648-49, 122 S. Ct. 2460, 153 L. Ed. 2d 604 (2002) ("The Establishment Clause . . . prevents a State from enacting laws that have the 'purpose' or 'effect' of advancing or inhibiting religion.").

As to the first prong, courts determine the *purpose* of government action using an objective standard. *McCreary County v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 862, 125 S. Ct. 2722, 162 L. Ed. 2d 729 (2005). While a sham secular justification will not satisfy the first prong, courts give the government deference regarding its secular justification. 545 U.S. at 865. Additionally, when the issue concerns prison administration, the courts generally afford even greater deference. *Turner v. Safley*, 482 U.S. 78, 86, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

Given that amount of deference, we find that the purpose behind requiring Robertson and his rabbi to interact through video conferencing is secular in nature. The secular purpose is for security and personnel reasons, both areas where courts should grant prison administration great deference. See *Turner*, 482 U.S. at 86 (recognizing that judgments regarding prison security are squarely within the province of prison authorities). According to the warden's testimony, the face-to-face visitation implicated numerous safety concerns, including an increased risk of attacks, introduction of contraband, and additional disturbances. The face-to-face visits also consumed a large quantity of manpower, causing these visits to waste personnel resources. Requiring video conferences for all inmates in the segregation unit ameliorated these concerns.

Turning to the second prong, the primary *effect* of EDCF's visitation policy is not the endorsement of Christianity or the disapproval of Robertson's religion. Indeed, there is no evidence that the prison administration discriminated against the Messianic Jewish faith or any faith. Robertson claims that the prison advanced the Christian faith through the use of its chaplains. However, he provides no evidence, even under the prison's old policy, that prison chaplains were authorized to have face-to-face visits with inmates

because they were Christian. Moreover, under the prison's current policy, it appears that no chaplains or religious advisors, regardless of religious affiliation, are allowed to have face-to-face visits with inmates in administrative segregation.

Robertson also argues that permitting visits from the Bill Glass Ministries advanced the Christian faith. Bill Glass Ministries is a Christian organization that travels around the country and talks to inmates and oftentimes provides inmates with Christian Bible tracts. Importantly, the ministries did not participate in private, face-to-face visits with the inmates in segregation. The ministries merely walked along the administrative segregation unit with prison escorts, speaking to inmates in their cells through the cell doors only at the inmate's voluntary request. The evidence established that the Bill Glass Ministries only visited EDCF once every three to five years. There is no evidence that ministries representing other religious faiths have ever requested visitation at EDCF. Based on the evidence presented at the hearing, EDCF's action in permitting the Bill Glass Ministries to walk along the segregation unit did not have the primary effect of the prison advancing Christianity over Robertson's faith.

To sum up, Robertson has failed to make a showing that EDCF violated his rights under the Establishment Clause in the manner that it has applied its visitation policy with inmates in the segregation unit. Although we do not adopt the district court's reasoning in its entirety, we agree that the district court correctly found that Robertson's rights under the Establishment Clause have not been violated. Thus, we conclude the district court did not err in dismissing Robertson's K.S.A. 60-1501 petition in its entirety.

Affirmed.