NOT DESIGNATED FOR PUBLICATION

No. 117,068

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK LYNN,
*Appellant*,

v.

REX PRYOR, WARDEN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed May 25, 2018. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Sherri Price*, special assistant attorney general, of Lansing Correctional Facility, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: Patrick Lynn appeals from an order of the district court denying his K.S.A. 2017 Supp. 60-1501 petition. The district summarily dismissed six of Lynn's seven claims, finding that the disciplinary sanctions he appealed from did not implicate a protected liberty interest. The district court found that although the seventh claim did involve a protected liberty interest, Lynn voluntarily dismissed that claim. In the course of the proceedings, the district court also denied Lynn's motion to add some 55 additional disciplinary conviction claims to the original petition and denied Lynn's request for an injunctive order prohibiting his transfer from Lansing Correctional Facility. We find no error or abuse of discretion, and we affirm the district court.

1

*Factual and Procedural Background*

Lynn is an inmate in the Kansas correctional system. He filed a pro se habeas corpus petition under K.S.A. 2017 Supp. 60-1501 in August 2015 while confined in Lansing Correctional Facility. He challenges his convictions arising from seven disciplinary hearings as well as number of other alleged practices which he argues violate his constitutional rights.

*Disciplinary Violation #5913*

On March 17, 2015, Lynn was issued a disciplinary report for threatening a nurse in violation of K.A.R. 44-12-306. The report states Lynn told the nurse, "'I get out of here in two fucking months, you remember that. You wait [and] see what I do to you.'" Lynn alleged that the nurse filed the report in retaliation against him because she believed he reported her for engaging in criminal activity. When prison officials went to Lynn's cell to have him sign forms, he "became very upset and began to yell and threaten staff because he didn't want his hearing held at his cell." Lynn said to tell the nurse that he was still going to "get to her and beat her ass!" Because of Lynn's comments, his disciplinary hearing was held in absentia; Lynn was represented by a proxy. While Lynn requested several witnesses, the requests were denied on the basis that the requested persons did not witness the exchange between Lynn and the nurse. The nurse testified and the hearing officer found that there was sufficient evidence to find Lynn guilty of violating K.A.R. 44-12-306. Lynn received 30 days of disciplinary segregation and 60 days of privileges restriction.

*Disciplinary Violation #7687*

Lynn's threat that he was going to beat the nurse resulted in the generation of another disciplinary report for threatening or intimidating any person in violation of

2

K.A.R. 44-12-306. In his petition, Lynn admitted he "vow[ed] to 'get at that corrupt skank soon.'" However, in his appellate brief, Lynn does not otherwise mention the case that is the subject of #7687; even though the report of this incident is in the record, the disposition of the disciplinary action does not appear in the record on appeal.

*Disciplinary Violation #5918*

Also on March 17, 2015, Lynn called a corrections officer to his cell to talk about his property. Lynn then told the officer to call for medical assistance, alleging he was experiencing chest pain. Lynn went to the health clinic for evaluation where the nurses found him to be in no acute medical distress. Lynn was issued another disciplinary report for interfering with official duties in violation of K.A.R. 44-12-320a. While trying to conduct the disciplinary hearing, Lynn threatened the hearing officer, punched the window in his cell, and was "screaming and yelling various disrespectful comments."

The hearing was held in absentia and Lynn was represented by a proxy. The proxy asked the reporting officer if Lynn's chest pains could have been caused by distress over the property issue. The reporting officer replied that the medical staff did not find him in acute distress, and also testified Lynn "stated he would call chest pains" because he was mad. The hearing officer found the evidence supported the report and gave Lynn 60 days of privilege restrictions.

*Disciplinary Violation #5936*

On March 18, 2015, Lynn said he again experienced heart spasms and overwhelming nausea that caused him to "vomit[] at the cell bars in torrents." He alleged he asked for help but the prison guards did not get help for over 30 minutes. When he was taken to the health clinic and hooked up to the EKG machine, he alleged a nurse began agitating him. So, he removed the EKG cables and began to leave. Then, Lynn

3

alleges a corrections officer grabbed him from behind around his mouth and nose and sprayed him with a chemical agent, causing him to choke and have another heart attack. The corrections officer reported a different version of events. The officer reported that Lynn tried to kick a table at the nurse and, when the officer tried to restrain him, Lynn bit the officer's arm and would not release. Lynn was cited for battery in violation of K.A.R. 44-12-324.

The hearing was held on the same day as the hearing for Lynn's prior disciplinary report, and Lynn was represented by a proxy. The hearing officer found the reporting officer was more credible than Lynn, and the evidence showed a violation of K.A.R. 44-12-324. Lynn received 45 days of disciplinary segregation, 60 days of privilege restrictions, and lost 163 days of good time credit. Lynn's petition states he was also placed on "'MRA' status," which Lynn explained meant "more restricted area."

*Disciplinary Violation #5943*

The day after the battery charge, Lynn was charged with three more violations: disobeying orders (K.A.R. 44-12-304), insubordination or disrespect (K.A.R. 44-12-305), and threatening or intimating any person (K.A.R. 44-12-306). Lynn alleged that he was in a cold, 50-60 degree cell with no clothing, but he was able to obtain a blanket from a passing inmate. He alleged that he woke up a few hours later to a corrections officer screaming at him that he had to give the blanket back and she did not care if he was cold. Lynn refused, and alleged this caused him to be sprayed with chemical agent and "violently attacked by 4 guards in riot gear . . . which included being viciously punched in the face." Lynn states this caused him another heart attack, and after the attack, he was returned to the same cell and choked on the gas still inside the cell. The reporting officer said she ordered Lynn to "cuff up." Lynn refused, telling her that she would have to fight him. She tried to get cuffs on him without fighting, but he grabbed for her hand and pepper spray. She used pepper spray, and when that did not work, she used force to gain

4

compliance. She reported Lynn called her a bitch, among other names. When the guards took Lynn to get fresh air, he told the corrections officer that he would get out of prison in two months and "show [her] what retaliation really was."

Lynn's disciplinary hearing was held on the same date as his prior two hearings, and for the same reason it was held in absentia with a proxy. The hearing officer found the reporting officer and witness to be credible and gave Lynn 60 days of disciplinary segregation and 150 days of privilege restrictions.

*Disciplinary Violation # 7684*

On June 10, 2015, Lynn incurred another disciplinary violation for interfering with official duties in violation of K.A.R. 44-12-320a. On that day, he complained of having heart spasms. When a nurse arrived, Lynn refused treatment. Lynn contended he had a conflict of interest with the nurse "which entitled [him] to be treated by another conflict free nurse." This occurred at least four times during the nurse's shift.

Due to Lynn's "continued threatening and disruptive behavior at disciplinary hearings" the hearing was held in absentia with a proxy. The hearing officer found the reporting officer's testimony was credible, and if Lynn was truly having chest pains he would not have refused treatment. The hearing officer imposed 60 days of privilege restrictions.

*Disciplinary Violation #7675*

When Lynn was returning from the health clinic after refusing treatment, he received a disciplinary report for battery in violation of K.A.R. 44-12-324. The reporting officer said Lynn jumped out of his wheelchair and told the corrections officers: "I'm not living like this, I'm gonna make you use force." When an officer grabbed Lynn by the

5

arm, Lynn began kicking and struck the officer. In his petition, Lynn contends that while he was returning to his cell he yelled to a corrections officer he needed to speak to him because it was 100 degrees in his cell and he was having heart spasms. The officers who were escorting Lynn allegedly told him no, and then "violently slammed [him] down, knocking the wind out of [him and] causing [him] to exclaim 'I can't breathe'." Lynn alleges he was left to suffer in his cell while having a mild heart attack. Lynn went back to the health clinic when the employees' shifts changed.

The hearing occurred in absentia with a proxy because of Lynn's disruptive behavior. Lynn was kicking his door and banging on the cell glass. The hearing officer found evidence to support the charge, and issued 45 days of disciplinary segregation and 60 days of privilege restrictions.

*Other claims in the 60-1501 petition*

In addition to challenging the disciplinary reports, Lynn also challenges a practice he refers to as "UnSat." He alleges, "as a result of incurring a [disciplinary report] or the arbitrary whim of guards [with] malicious inclinations to lie" he lost the rights to outside exercise, fresh air, and sunshine for the allotted one hour per day. He argues this is an inhumane punishment and is not authorized as a punishment under K.A.R. 44-12-1301, K.A.R. 44-12-1302, or K.A.R. 44-12-1303. He asked the court to enjoin the "unsat" practice. Lynn also asked for an injunction prohibiting Lansing Correctional Facility from transferring him to any other prison without a full evidentiary hearing.

In April 2016, Lynn filed a motion for leave to amend his petition to include an additional 55 disciplinary convictions incurred since his initial filing. The district court denied Lynn's motion to amend.

*Disposition of Lynn's Claims*

The district court held a hearing on August 30, 2016, to address the claims in Lynn's petition. The district court judge dismissed six of Lynn's claims for relief regarding disciplinary actions #5913, #7687, #5918, #5943, #7484, and #7675, finding no protected liberty interest was involved. The judge noted the punishments stemming from those disciplinary violations were either privilege restrictions or disciplinary segregation. The judge considered Lynn's claim regarding disciplinary action #5936 because he lost 163 days of earned good time credits, and that punishment did implicate a liberty interest. The judge began to address the claim, when Lynn interrupted. Lynn alleged prison officials destroyed his property, and he demanded the court address the issue. Sherri Price, counsel for Lansing Correctional Facility, explained Lynn had exceeded the amount of legal property allowed under the prison's procedures. The prison gave Lynn one week of notice to comply with the procedures, and when he did not, prison staff took the property and held it at Lansing. Lynn replied:

> "MR. LYNN: Hey, Judge, I told you in the letter, if they destroyed my property I am going to stab a prison guard. I am going to cut the throat of one of these motherfuckers. What you've done to me, you've ruined my life. You've—you've told me I have no court access whatsoever. So—so that's the—that's the attack I'm going. When I get this criminal case, Judge, and I will get—get this before I die, but when I get this criminal, I'll—I'll subpoena you and her and—and we'll—we'll show this is what you people set in stage. You—you—you destroyed every opportunity I've had to litigate this case.
>
> "THE COURT: All right. So I'm going to set an evidentiary hearing for you to be able to have—testify—
>
> "MR. LYNN: That's so fuckin'—
>
> "THE COURT: —and call witnesses—
>
> "MR. LYNN: I'm going—I'm going to (indiscernible) motherfuckers first chance—
>
> "THE COURT: —relative to the—relative to your nonappearance at the hearing.

7

"MR. LYNN:  You understand that, Sherri? I'm going to (indiscernible) fuck—

"THE COURT:  As to these lack of staff—

"MR. LYNN:  (indiscernible) my shit—

"THE COURT:  —the service, and also any evidence that you wish to present concerning the impair—the impartiality of the hearing officer.

"MR. LYNN:  You ain't got to worry about me fuckin' filing or appearing. Nothing. I'm on a mission now from God. I'm gonna—I'm gonna fuckin' cut one of them's throat. Watch and see asshole. We're done.

"THE COURT:  All right. So you wish to dismiss this case then?

"MR. LYNN:  You do whatever the fuck you want. I'm gonna cut somebody's throat, watch and see. And that's a criminal offense, charge me motherfucker. You fuckin' two-faced—

"THE COURT:  I take that as a motion to dismiss. Thank you, Mr. — thank you, Mr. Lynn. Okay. We're done."

Following this exchange, the district court held that Lynn agreed to a dismissal of his case. The court dismissed the remaining claim.

Lynn appealed.

*The district court properly dismissed six of Lynn's claims.*

The district court dismissed six of Lynn's claims for relief, finding that since the disposition of those claims involved only imposition of disciplinary segregation or privilege restrictions, they did not implicate a constitutionally protected liberty interest.

On appeal, Lynn does not argue that disciplinary segregation or privilege restrictions involve a protected interest but argues the court erred by failing to consider numerous other sanctions which he alleges in his petition:  MRA ("more restricted area"), planned use of force, prison transfers, "unsat," inhumane living conditions, and withholding necessary medical treatment.

8

To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "In determining if this standard is met, courts must accept the facts alleged by the inmate as true." *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005). A court can summarily dismiss a habeas corpus petition "[i]f it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief." K.S.A. 2017 Supp. 60-1503(a). An appellate court exercises unlimited review of a summary dismissal. *Johnson*, 289 Kan. at 649.

In addition to stating constitutional claims, an inmate must file "proof that the administrative remedies have been exhausted" with a habeas corpus petition. K.S.A. 75-52,138. This court has "required strict compliance with these exhaustive requirements." *Corter v. Cline*, 42 Kan. App. 2d 721, 723, 217 P.3d 991 (2009). Lynn included proof of exhaustion of administrative remedies in five of the seven disciplinary convictions he challenges in his K.S.A. 2017 Supp. 60-1501 petition (disciplinary violations #5913, #5918, #5936, #5943, and #7675).

Lynn's lengthy petition makes numerous allegations of unconstitutional conduct. However, this does not necessarily entitle Lynn to relief under K.S.A. 60-1501. Some of the allegations he makes are not supported by sufficient facts to find that a due process interest exists. The remaining allegations, if true, may implicate due process rights. However, the record is clear Lynn did not exhaust his administrative remedies regarding those allegations.

*Establishing liberty interests*

"The limited range of liberty interests afforded by the Fourteenth Amendment to prison inmates arises from two sources:  (1) the Due Process Clause itself and (2) the laws of the states." *Amos v. Nelson*, 260 Kan. 652, 659, 923 P.2d 1014 (1996). When a

9

state creates a liberty interest which is protected by the Due Process Clause, the interest is usually "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). In *Amos*, the Kansas Supreme Court explained how to determine whether a state has violated an inmate's due process rights regarding a state-created liberty interest:

> "The threshold test to determine a violation of due process is whether the state laws and regulations structuring the authority of prison officials contain language of an unmistakably mandatory character requiring that certain procedures must be employed and that punishment will not occur absent specified substantive predicates. If this threshold test is met, we examine whether the discipline imposed represents a significant and atypical hardship on the prisoner which was not contemplated within the realm of conditions of the original sentence. If it does not, there is no due process violation." 260 Kan. at 666.

Lynn complains about being placed on "MRA status," which he describes is a classification meaning he is limited to a more restricted area. His petition alleges he was on MRA status on March 18, 2015, and released from the status on March 21, 2015. The Kansas Department of Corrections Internal Management Policy and Procedure (IMPP) 20-105 provides that MRA status is a form of administrative segregation. The Kansas Supreme Court held "that administrative segregation does *not* represent a significant and atypical hardship on the prisoner in relation to the ordinary incidents of prison life." *Murphy v. Nelson*, 260 Kan. 589, 602, 921 P.2d 1225 (1996); see *Sandin*, 515 U.S. at 486 (holding that an inmate's placement "in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Thus, the brief period of Lynn's alleged MRA sanction would not constitute a due process violation of a protected interest.

10

Lynn also complains about prison transfers. In his petition, he asked the district court to require a full evidentiary hearing before he can be transferred from one prison to another. In his appellate brief, Lynn asks this court to take judicial notice of entries on the Kansas Adult Supervised Population Electronic Repository (KASPER), which shows Lynn was transferred between El Dorado Correctional Facility, Hutchinson Correctional Facility, and Lansing Correctional Facility six times between the filing of his K.S.A. 2017 Supp. 60-1501 petition in August 2015 and its dismissal in August 2016. However, the United States Supreme Court has held that an inmate does not have a liberty interest in not being transferred to a different facility. *Meachum v. Fano*, 427 U.S. 215, 228-29, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976). The Court noted: "The individual States, of course, are free to follow another course, whether by statute, by rule or regulation, or by interpretation of their own constitutions." 427 U.S. at 229. Additionally, the Kansas Department of Corrections' policy on inmate transfers, IMPP 11-103, does not "contain language of an unmistakably mandatory character requiring that certain procedures must be employed and that punishment will not occur absent specified substantive predicates." *Amos*, 260 Kan. at 666. Lynn does not explain how prison transfers impose an atypical hardship upon him. Therefore, due process is not implicated in Lynn's transfers to different prisons.

*Exhaustion of administrative remedies is a prerequisite to habeas relief.*

The remainder of Lynn's claims might implicate a protected liberty interest or demonstrate continuing mistreatment of a constitutional stature. However, regarding these claims Lynn failed to adhere to the requirement of exhaustion of administrative remedies. See K.S.A. 75-52,138. His failure to comply with this requirement is fatal to the remaining claims.

Lynn asked the district court to enjoin the prison from engaging in a practice he refers to as "unsat." His petition alleges that "as a result of incurring a [disciplinary

11

report] or the arbitrary whim of guards [with] malicious inclinations to lie, perjure themselves, or otherwise abuse their authority," he routinely lost his "legal right to outside exercise, fresh air, sunshine for the allotted 1 hr. per week-day 'rec-time' for segregation prisoners." Under IMPP 20-101, inmates in disciplinary segregation "shall be allowed to exercise outside the cell, if desired, for at least one hour per day and at least five days per week unless security, health, or safety considerations dictate otherwise." Inmates "shall be permitted to exercise outdoors, for four of the five days, to the extent that facilities and staff are available to maintain basic security for those inmates." An inmate may be required to remain in his or her cell if "[a] substantial security risk for the inmate is documented." Furthermore, an inmate's right to outdoor exercise may be suspended for up to 30 days "[i]f while in segregation status an inmate has threatened or battered staff or has possessed dangerous contraband."

The mandatory language of the prison policies suggests the State has created a liberty interest in outdoor exercise for inmates, which can only be curtailed if certain procedures are employed. Lynn alleges no procedures were employed in depriving him of his right to outdoor exercise. Courts must accept his allegations as true in determining whether he raises claims of a constitutional statute. *Hogue*, 279 Kan. at 850. Arbitrary prevention of outdoor exercise could be considered an atypical hardship on an inmate. Several courts have held that lengthy denial of outdoor exercise could constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution. See *Perkins v. Kansas Dept. of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999) ("[T]he district court erred in sua sponte dismissing plaintiff's Eighth Amendment claim for deprivation of outdoor exercise."); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (holding that denying inmates outdoor exercise for four and a half years constituted cruel and unusual punishment, but refusing to "decide whether deprivation of outdoor exercise is a per se violation of the eighth amendment"); but see *Wilkerson v. Maggio*, 703 F.2d 909, 912 (5th Cir. 1983) (holding that an inmate who was denied outdoor exercise for five

12

years, but was permitted to exercise indoors, did not suffer a violation of his Eighth Amendment rights).

Depriving an inmate of outdoor exercise for a considerable length of time could constitute cruel and unusual punishment. Lynn's petition does not specify how long he was deprived outdoor exercise. However, it is unnecessary to determine whether Lynn's constitutional rights were violated by the "unsat" practice because he failed to avail himself of administrative remedies. Nowhere in his petition does Lynn allege he challenged the practice through administrative means. Because inmates must exhaust administrative remedies before bringing claims in a K.S.A. 2017 Supp. 60-1501 petition, the district court could not consider this claim.

Lynn also failed to exhaust his administrative remedies regarding the alleged "planned use of force." Lynn alleges a corrections officer ordered him to give her his blanket. He refused. He then alleged, "[b]ecause I refused to give up the blanket, Capt. Fortier summoned an SST crew to do a planned use of force on me." The corrections officer alleged she told Lynn to put handcuffs on, he refused, and told her she would have to fight him. When she tried to get handcuffs on him, he grabbed for her hand and pepper spray. She used the pepper spray and physically forced him to comply. "[T]he 'unnecessary and wonton infliction of pain,' [citations omitted]," against prison inmates "constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977). Lynn never utilized the prison's administrative procedures to challenge the correctional officers' alleged use of force. His failure to exhaust administrative remedies prevented review of his claim.

Finally, Lynn argues the prison withheld necessary medical treatment and his claim should have survived summary dismissal. Lynn had a quadruple heart bypass in July 2014. He continues to experience chest pain and heart issues. Nitroglycerin tablets

13

appear to help his pain. His petition alleges he was experiencing heart spasms on March 17, 2015. He was taken to the medical clinic, given nitroglycerine tablets, and an EKG. He experienced heart spasms and nausea the next day. He alleges the corrections officers refused to get help for over 30 minutes. However, when he was taken to the health clinic, he refused treatment. Lynn tried to leave the clinic, and he alleges the corrections officers used force against him and caused him to have more heart spasms. Lynn received nitroglycerine tablets and an Ativan injection. That night he alleged the guards used force on him again, causing a mild heart attack. He was given more nitroglycerine. In June 2015, Lynn called for medical assistance and was taken to the infirmary. Once there, he refused treatment because he did not like the nurse. On his way back to the cell, he alleged more excessive use of force which caused him to have another heart attack. He was offered immediate medical assistance, but refused because he did not like the nurse. Upon shift change, Lynn was seen by a different nurse and received nitroglycerine tablets and an EKG. Later that month, Lynn alleged a nurse refused to give him nitroglycerine tablets but he was able to get some from different nurses. Lynn's allegations do not show the prison refused to give him medical treatment. In most cases, Lynn received immediate treatment. In cases where Lynn's treatment was arguably delayed, such as his allegation the guards waited 30 minutes to take him to the clinic, Lynn refused treatment. This suggests he was not in acute distress. Furthermore, to the extent he was allegedly denied treatment, Lynn did not include any proof with his petition that he availed himself of and/or exhausted administrative remedies.

*Conclusion*

The district court did not err in holding six of Lynn's seven disciplinary convictions did not implicate a constitutionally protected liberty interest. Lynn has raised many claims outside of the scope of the disciplinary convictions to attempt to show a liberty interest exists. However, to the extent some of these claims may concern protected

liberty interests, Lynn failed to exhaust his administrative remedies. The district court's dismissal of the six claims is affirmed.

*The district court did not err in dismissing Lynn's seventh claim.*

Lynn next argues the district court erred in dismissing his seventh claim involving disciplinary violation #5936. He asserts the district court misinterpreted his inflammatory and obscene outburst as a motion to dismiss, and he did not intend for his claim to be dismissed.

Voluntary dismissal of a case can be accomplished by a plaintiff if a plaintiff files a notice of dismissal or stipulation of dismissal signed by all parties. K.S.A. 2017 Supp. 60-241(a)(1). Alternatively, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." K.S.A. 2017 Supp. 60-241(a)(2). Lynn's case was dismissed by court order. "Unless the order states otherwise, a dismissal [by court order] is without prejudice." K.S.A. 2017 Supp. 60-241(a)(2). Generally, "[a] trial court's order granting a motion for voluntary dismissal without prejudice is not a final order and, as such, an appellate court is without jurisdiction to consider an appeal of that order." *Bain v. Artzer*, 271 Kan. 578, Syl. ¶ 2, 25 P.3d 136 (2001). In such case, Lynn could have avoided a prejudicial dismissal by seeking reconsideration of the ruling and/or by refiling his petition. However, Lynn argues that he did not make a motion for voluntary dismissal at all. Thus, the issue here is determining whether the district court made a factual error when it construed Lynn's comments as a motion to dismiss.

Before the district court dismissed Lynn's final claim, the judge had begun to discuss Lynn's options for prosecuting that claim. The court noted Lynn complained he never received a written statement of the charge against him, and he and the State could each put on evidence regarding receipt of the statement. Regarding Lynn's argument the disciplinary hearing was not timely held, the court advised Lynn he would have to show

15

prejudice stemming from the untimely hearing. Lynn could also present evidence to rebut the prison's contention he was too disruptive to appear in person at his disciplinary hearing. It was then Lynn interrupted to demand that the court address his "missing and destroyed property." The court tried to redirect the conversation back to the evidence Lynn could present at the 60-1501 evidentiary hearing, but Lynn said "you ain't got to worry about me fuckin' filing or appearing. Nothing. I'm on a mission now from God. I'm gonna—I'm gonna fuckin' cut one of them's throat. Watch and see asshole. We're done." The judge asked Lynn if he wished to dismiss the case and Lynn told him "[y]ou do whatever the fuck you want." Lynn again threatened to cut someone's throat. The judge stated he took Lynn's comments as a motion to dismiss. The prison's attorney stated she had no objection. Lynn did not object or make any further comments.

Although the record would appear to support a sound exercise of discretion by the district court, we need not definitively determine whether the district court erroneously dismissed Lynn's remaining claim because the invited error doctrine bar's Lynn's argument on appeal that he did not intend to dismiss the claim. An invited error is "[a]n error that a party cannot complain of on appeal because the party, through its conduct, encouraged or prompted the trial court to make the erroneous ruling." Black's Law Dictionary 660 (10th ed. 2014). "That common-sense rule applies in criminal and civil proceedings." *State v. Schreiner,* 46 Kan. App. 2d 778, 788, 264 P.3d 1003 (2011). We exercise unlimited review over the application of the doctrine since it represents a question of law. *State v. Hankins,* 304 Kan. 226, 230, 372 P.3d 1124 (2016).

There is no reason why the doctrine of invited error should not be applied in the context of dismissal of an action. Here, Lynn, in certainly less than polite or respectful language, clearly expressed his intent and told the judge to do whatever he wanted to do. This shows that Lynn both invited the error and failed to object to the district court's ruling. This is not a case where Lynn merely acquiesced to the district court's judgement—Lynn's comments to the court were the impetus of the court's dismissal.

16

*The district court did not err in denying Lynn's motion to amend his petition.*

Lynn made a number of motions to amend and supplement his K.S.A. 60-1501 petition with additional disciplinary convictions throughout the case. This culminated in an April 2016 "Motion for Leave of Court To File Either A Massive & Comprehensive Amended Petition or A Likewise Supplemental Habeas Petition." In this motion, he sought to add 55 disciplinary convictions incurred since he filed his original K.S.A. 60-1501 petition eight months earlier. The district court judge denied Lynn's motion to amend, finding the claims in the motion to amend did not relate to the disciplinary actions challenged in Lynn's original petition.

"[A] party may amend its pleading only with the opposing party's written consent, or the court's leave. The court should freely give leave when justice so requires." K.S.A. 2017 Supp. 60-215(a)(2). "A district court is given broad discretionary power under [K.S.A.] 60-215 to permit the amendment of pleadings. *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, 327, 913 P.2d 119 (1996). This court "generally reviews a district judge's decision on a motion to amend pleadings for abuse of discretion." *Thompson v. State*, 293 Kan. 704, 709, 270 P.3d 1089 (2011). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Here, Lynn argues each of the disciplinary convictions he sought to add to his petition involved the same due process issues. Specifically, he argues each conviction was obtained in violation of the mandates set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), relating to due process in prison disciplinary hearings. *Wolff* "is the benchmark case defining what process is required for prison disciplinary hearings." *In re Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001). This process "include[s] an impartial hearing, a written notice of the charges to enable inmates

17

to prepare a defense, a written statement of the finding by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence." 271 Kan. at 627 (citing *Wolff*, 418 U.S. at 563-66). Lynn argued that because *Wolff* violations were involved in each of his claims, a ruling on one case would "affect every other one" and they would all have to be vacated.

The district court did not abuse its discretion in denying Lynn's motion to amend. The primary issue with Lynn's original petition was whether he asserted the deprivation of a protected liberty interest. An inmate must show that a protected liberty interest is involved to give rise to due process protections such as those in *Wolff*. For example, in *Hardaway v. Larned Correctional Facility*, 44 Kan. App. 2d 504, 238 P.3d 328 (2010), an inmate filed a K.S.A. 60-1501 petition arguing that he was not given a fair hearing and was thus denied due process. The Court of Appeals found he had "not suffered any deprivation that would implicate a protected liberty interest." 44 Kan. App. 2d at 506. Therefore, the court did "not consider whether the prison disciplinary hearing on [the] charge met all of the normal standards of due process." 44 Kan. App. 2d at 506. Allowing Lynn to add more claims regarding *Wolff* violations would not have related to whether his original claims asserted a protected liberty interest. Lynn's argument that resolution of the *Wolff* issue would effectively resolve the appeals of each of his disciplinary convictions is unpersuasive.

Furthermore, it was reasonable for the district court to deny the motion to amend in the interest of effective resolution of the case. Kansas' civil procedure code states its provisions "shall be liberally construed, administered and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding." K.S.A. 2017 Supp. 60-102. The action had been ongoing for over eight months at the time Lynn filed his motion to supplement. Lynn filed more than 20 motions and other documents with the court by that point. The court held five hearings. In order to effectively resolve the issues raised in his original petition, it was reasonable for the court

18

to deny Lynn's motion to add more claims. If the district court were to address the evidentiary basis for any of the convictions in Lynn's petitions, it would be best for the witnesses to have fresher recollections of events. Furthermore, the fact Lynn incurred 55 additional disciplinary convictions over a period of approximately eight months means he averaged more than one violation per week. Allowing Lynn to amend his petition any time he incurred a new violation could lead to an interminable case.

The district court did not abuse its discretion by denying Lynn's motion to add some 55 unrelated disciplinary conviction claims to his original K.S.A. 60-1501 petition. The decision was reached without demonstrable legal or factual error and reasonable persons could, and most likely would, reach the same conclusion.

*The district court did not err in denying Lynn's request for injunctive relief.*

Lynn argues the district court erred in denying his request for injunctive relief under K.S.A. 2017 Supp. 60-1505(c) based on a misinterpretation of the law. In his 60-1501 petition, Lynn asked the court to issue a temporary restraining order or permanent injunction prohibiting Lansing Correctional Facility from transferring him to any other prison without "a full evidentiary hearing before the Court to assure no aspect of retaliation exists for such." The State objected, arguing Lynn had not exhausted his administrative remedies on the issue. The court held there was no authority for it to issue a temporary order that Lynn "be physically restrained in a particular location."

"An appellate court reviews the grant or denial of injunctive relief for an abuse of discretion. [Citation omitted.] The party alleging the error has the burden of showing the abuse of discretion." *Steffes v. City of Lawrence*, 284 Kan. 380, 393, 160 P.3d 843 (2007). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Marshall*, 303 Kan. at 445.

19

Lynn argues the district court abused its discretion by making an error of law. He cites K.S.A. 2017 Supp. 60-1505(c) as authority for the court to grant his requested relief: "(c) *Temporary orders*. The judge may make an order for the temporary custody of the party and any other temporary orders during the pendency of the proceeding that justice may require."

The party raising an issue for appellate review bears the burden of providing an adequate record for review of the claim. Because the district court's order denying injective relief is not in the record on appeal, we cannot determine whether the district court considered K.S.A. 2017 Supp. 60-1505(c). The district court may have determined the statute did not authorize placement in a specific prison, which is what Lynn requested. Or, the district court may have determined justice did not require it to make an order for temporary custody. It is also possible the district court did not consider the statute at all. Based on the district court judge's comments during a hearing in which the issue arose, it seems the court did not think it had the authority to order Lynn to be detained in a particular location. The judge stated he reviewed the statutes and caselaw and could not find authority for such an order.

The plain language of K.S.A. 2017 Supp. 60-1505(c) does not provide any authority for permanent injunctions against prison transfers. If anything, it would only allow for temporary custody for the pendency of a K.S.A. 60-1501 case. So, the district court did not err insofar as it denied Lynn's request for a permanent injunction prohibiting Lansing Correctional Facility from transferring him.

Lynn's petition also requested a temporary restraining order requiring Lansing Correctional facility to hold a full evidentiary hearing before transferring him to a different facility. Between filing his petition and his second motion for orders, Lynn was transferred to a different prison. In his second motion for orders, he asks the court to return him to Lansing "at least temporarily 'during the pendency of the proceedings'." The

20

plain language of the statute does not suggest inmates can choose which prison in which they wish to be detained, nor does it authorize the court to require a full evidentiary hearing before a prison may initiate a transfer. While K.S.A. 2017 Supp. 60-1505(c) authorizes courts to make an order for temporary custody of a party, it does not authorize the specific relief Lynn seeks.

The district court is affirmed.