No. 100,523

EDWARD C. JOHNSON AND CHASE C. COLLINS, *Appellants*, v.
STATE OF KANSAS, *et al.*, *Appellees.*
(215 P.3d 575)

Opinion filed September 11, 2009.

*Sam S. Kepfield*, of Hutchinson, argued the cause and was on the brief for appellants.

*Danny J. Baumgartner*, litigation attorney, Kansas Department of Social and Rehabilitation Services, argued the cause, and *C. William Ossmann*, chief of litigation, Kansas Department of Social and Rehabilitation Services, was with him on the brief for appellees.

The opinion of the court was delivered by

LUCKERT, J.: Edward Johnson and Chase Collins (Petitioners) filed a pro se petition for writ of habeas corpus pursuant to K.S.A. 60-1501 in Pawnee County District Court, seeking release from the custody of the Department of Social and Rehabilitation Services (SRS) and the Sexual Predator Treatment Program (SPTP) at Larned State Hospital (Larned). Petitioners allege that the SPTP, as applied to them, is constitutionally inadequate to "cure" their conditions and lead to their eventual release.

The State filed a motion for summary dismissal, arguing primarily that, as a matter of law, the Petitioners have failed to establish conduct that is shocking to the conscience and cannot succeed in establishing a continuing constitutional violation. More specifically, the State noted it is uncontroverted that Johnson and Collins have not complied with the program because they disagree with the treatment regimen and, as a result, Johnson and Collins cannot establish that the SPTP will not lead to their eventual release.

We agree with the State's argument and affirm the summary dismissal of the petition, concluding Johnson and Collins (1) have failed to allege conduct that is shocking to the conscience and (2) cannot establish a continuing constitutional deprivation regarding the efficacy of the program because they (a) lack standing to raise issues regarding the adequacy of the treatment program as applied to others and (b) raise only a hypothetical question of whether the treatment program could be effective if they fully participated.

*Factual and Procedural Background*

Johnson and Collins' petition originally alleged several additional constitutional violations, including that the Larned staff have retaliated against them for making complaints about the SPTP, have denied resident-initiated proposals, and have failed to provide the least restrictive environment by denying access to cable television in residents' rooms and requiring residents to remain in their rooms at night. The focus of the petition, however, was the inadequacy of the treatment program.

In liberally construing the pro se K.S.A. 60-1501 petition, the district court determined that the petition presented substantial questions of law and/or triable issues of fact warranting Johnson and Collins' request for appointed counsel. After counsel was appointed to represent Johnson and Collins, discovery was conducted and pretrial questionnaires were filed in which the Petitioners indicated that they were narrowing their issue to the following question:

"Does the SPTP program offer treatment sufficient to cure Petitioners' condition, leading to eventual release, or is the program a form of 'warehousing' Petitioners through a civil commitment process?"

The State filed a motion to dismiss for failure to state a claim upon which relief may be granted. The State first observed that Johnson and Collins, by their own admission, had not been compliant in the treatment program. Further, by alleging that security conditions are too excessive and that they are not obtaining enough help from their therapists, Johnson and Collins raised a substantive due process claim, which is judged by a less stringent standard for individuals who are civilly confined, and a commitment under the Kansas Sexually Violent Predator Act (SVPA), K.S.A. 59-29a01 *et seq.*, is clearly civil in nature, not criminal or punitive. With regard to training or rehabilitation in a civil commitment setting, the State argued that it has considerable discretion in determining the scope and nature of its responsibilities, and with regard to conditions, the State is only required to provide minimal necessities to insure Johnson and Collins have a reasonable opportunity to have "safety and freedom from undue restraint."

Second, the State contended Johnson and Collins failed to satisfy their burden of showing that the conditions or restrictions imposed on them bear no rational basis to the purpose of their confinement in Larned. Citing *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003), the State observed that under the Due Process Clause of the United States Constitution, a facility such as Larned is required to provide humane conditions including adequate food, shelter, clothing, and medical care, as well as reasonable steps to insure the residents' safety. The State noted that Johnson and Collins failed to raise this type of claim; rather the State pointed to specific allegations raised by Johnson and Collins, such as the "[denial] of cable TV in rooms," "keeping [residents] in their rooms at night," and "denying resident-initiated projects/proposals." Due process is not implicated by these allegations, according to the State.

In their response to the State's motion to dismiss, Johnson and Collins argued that since the SPTP was initiated in October 1994, only two residents have been released from treatment, while as of June 2007, more than 150 have been admitted to the program. Their source of information is unclear. The Petitioners claimed that "[t]wo patients in thirteen years is not a strong indicator of an effective program." For general support, Johnson and Collins cited an article coauthored by Dr. Austin DesLauriers, the program clinical director for the SPTP at Larned, which indicated that a "legitimate program should be expected to have graduates." See DesLauriers & Gardner, *The Sexual Predator Treatment Program of Kansas*, The Sexual Predator: Law, Policy, Evaluation, and Treatment, p. 11-21 (Schlank & Cohen eds. 1999).

The district court held a hearing on the State's motion to dismiss on February 11, 2008. At the hearing, Johnson and Collins presented the testimony of Dr. DesLauriers, which the court allowed to the extent the testimony went to the conditions and duration of the Petitioners' confinement and treatment.

The SPTP, according to Dr. DesLauriers' testimony, is a seven-phase program which includes both group and individual therapy, with an emphasis on group therapy. The first four phases comprise the intensive inpatient treatment portion of the program. Phase 1

is the orientation phase, Phase 2 is the academic phase in which the resident completes a 1-year curriculum aimed at "key principals of sexual behavior change." Phase 3 is the applied phase. Phase 4 was described by Dr. DesLauriers as a phase "for completing the relapse prevention plan and tying up in-patient issues."

Before a resident can move to the final three phases of the program—the transition phases—the resident must appear before a transition panel. The panel may either accept or reject the recommendations of the treating staff. Once it is determined by the transition panel that the resident is ready to enter the phases of transition treatment, the resident enters Phase 5 where he or she is escorted at all times and introduced to a graduated series of experiences on the grounds of Osawatomie State Hospital. From there, in Phases 6 and 7, the resident gradually becomes more independent by living in a cottage house on the grounds of Osawatomie, obtaining a job, attending outpatient therapy, and gaining conditional release for a minimum of 5 years.

Dr. DesLauriers testified that, as of the date of the hearing, there were 160 SPTP residents on the grounds of Larned. Six individuals have completed the final, seventh, phase of treatment, three of whom have gained final release, which entails no supervision. Dr. DesLauriers further testified that an additional 10 or 11 individuals are currently in the transition, or final, phases of treatment. He indicated that he "would like to see more people who are ready to graduate from the program," but the small number of individuals who have obtained final release is not unreasonable given the "growing pains" of the SPTP in its development.

After hearing the testimony of Dr. DesLauriers and the arguments of counsel, the district court issued a journal entry in which it found, in part:

"The evidence reflects that the Petitioners have a disagreement with the type of treatment that they received and are receiving at the [SPTP]. Some of those concerns deal directly with the applicability or availability of individual therapy versus group therapy. Others deal with rules of the program, [or] the manner in which those rules are implemented by the treatment team. Those types of decisions are all professional decisions to be made by a treatment team of mental health professionals."

The district court also found there was no allegation or showing of any deliberate indifference by any member of the mental health team or treatment team of the SPTP. In addition, the district court found no allegation that would "shock the conscience" of a reasonable person. Pointing to the State's wide range of latitude in determining and developing an appropriate treatment program, the district court found no allegation or evidence of unconstitutional treatment. Accordingly, the district court granted the State's motion to dismiss the Petitioners' request for relief under K.S.A. 60-1501.

Johnson and Collins now bring a timely appeal and argue the district court erred in dismissing their K.S.A. 60-1501 petition rather than permitting a full evidentiary hearing. The appeal was transferred to this court. See K.S.A. 60-2101(b); K.S.A. 20-3018(b).

### Standard of Review & General Principles of Law

K.S.A. 60-1501 allows "any person" confined in Kansas to prosecute a writ of habeas corpus in the county in which such restraint is taking place. Based on the broad language of K.S.A. 60-1501, a person confined in the SPTP is included within the purview of K.S.A. 60-1501 and, as a result, may bring a habeas corpus petition alleging due process violations. *Williams v. DesLauriers*, 38 Kan. App. 2d 629, 636, 172 P.3d 42 (2007).

In this case, the district court issued a writ, the State answered, and the district court conducted summary proceedings as allowed by K.S.A. 60-1505(a), which states in part: "The judge shall proceed in a summary way to hear and determine the cause and may do so regardless of whether the person restrained is present." The district court then granted the State's motion to dismiss. Consequently, we must determine if summary dismissal was appropriate.

To avoid summary dismissal of a K.S.A. 60-1501 petition, the petitioner's allegations must be of shocking and intolerable conduct or continuing mistreatment of a constitutional stature. *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998) (applying same standard under K.S.A. 60-1501). Summary dismissal is appropriate if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from

undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists. See *Barrett v. Hunter,* 180 F.2d 510, 514, *cert. denied* 340 U.S. 897 (1950) (stating standard); *Bankes,* 265 Kan. at 349 (ordinary rules of civil procedure do not apply in habeas corpus proceeding). An appellate court reviews a summary dismissal de novo. *Bankes,* 265 Kan. at 349; see *Breier v. Raines,* 221 Kan. 439, 439, 559 P.2d 813 (1977).

The first alternative for stating a claim under K.S.A. 60-1501—establishing shocking and intolerable conduct—derives from the Fourteenth Amendment to the United States Constitution, which prohibits the states from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; see *County of Sacramento v. Lewis,* 523 U.S. 833, 847, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998); *Levier v. State,* 209 Kan. 442, 451, 497 P.2d 265 (1972). Regarding the second alternative for stating a claim under K.S.A. 60-1501—continuing mistreatment of a constitutional stature—the Petitioners in this case rely once again on the Fourteenth Amendment; they argue the inadequacy of treatment is a substantive due process violation.

A determination of whether a due process claim is stated requires a two-step analysis. First, a court must analyze whether the State has deprived the petitioner of life, liberty, or property. If so, the court next determines the extent and the nature of the process due. *Hogue v. Bruce,* 279 Kan. 848, 850-51, 113 P.3d 234 (2005). The question of whether an individual's constitutional rights have been violated is a question of law over which an appellate court exercises unlimited review. *In re Habeas Corpus Application of Pierpoint,* 271 Kan. 620, 627, 24 P.3d 128 (2001).

With regard to the question of whether Johnson and Collins have a "liberty interest" at stake, the United States Supreme Court, in determining the SVPA was facially constitutional, stated that "freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.' [Citation omitted.]" *Kansas v. Hendricks,* 521 U.S. 346, 356, 371, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997); see *In re Care & Treatment of Ward,* 35 Kan. App. 2d 356, Syl. ¶ 4,

131 P.3d 540, *rev. denied* 282 Kan. 789 (2006) (recognizing that civil commitment as sexually violent predator involves a protected liberty interest). Accordingly, Johnson and Collins, as civilly committed residents in Kansas' SPTP, have the right to bring a claim regarding an alleged violation of their liberty interest to be free from physical restraint.

The existence of a liberty interest does not mean there cannot be restraint or confinement, however. Both the United States Supreme Court and this court have recognized that, consistent with substantive due process requirements, the State may involuntarily commit individuals who, as the result of mental impairment, are unable to care for themselves or are dangerous to others because the State's compelling interest in providing treatment and protecting the public prevails over the individual's interest in being free from compulsory confinement. See *Hendricks*, 521 U.S. at 358; *In re Care & Treatment of Hay*, 263 Kan. 822, 832-33, 953 P.2d 666 (1998). This court has further explained that the legislature has broad constitutional authority to adopt statutory programs to confine and treat people who might be dangerous to themselves or others and who suffer from some mental ailment, whether it is a mental abnormality, a personality disorder, or a mental illness as statutorily defined. *In re Hay*, 263 Kan. at 833.

Sexual attraction to children and a propensity to act upon it are defining symptoms of a recognized mental illness—pedophilia. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, pp. 527-28 (4th ed.1994) (302.2-Pedophilia). Further, the Kansas Legislature and the United States Supreme Court have decided that a diagnosis of pedophilia can be among the justifications for indefinite restriction of an offender's liberty to ensure the provision of treatment to him or her and the protection of others who could become victims. K.S.A. 59-29a01 *et seq.*; *Kansas v. Crane*, 534 U.S. 407, 409-10, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002); *Hendricks*, 521 U.S. at 356-60; see *State v. Prine*, 287 Kan. 713, 200 P.3d 1 (2009).

The SVPA, K.S.A. 59-29a01 *et seq.*, was enacted for the "potentially long-term control, care and treatment of sexually violent predators," as well as for the protection of the public. K.S.A. 59-

29a01; see K.S.A. 2008 Supp. 59-29a07(a). Once it has been determined that a person is a sexually violent predator, he or she shall be committed to the custody of SRS for control, care, and treatment "until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2008 Supp. 59-29a07(a). Because the SVPA narrows the class of persons eligible for confinement to those who find it difficult, if not impossible, to control their dangerousness, the SVPA was found to be facially constitutional by the United States Supreme Court in *Hendricks*, 521 U.S. at 356-60.

Recognizing this, Johnson and Collins do not contend that the SVPA is facially punitive or unconstitutional. Rather, what Johnson and Collins argue, in essence, is that the treatment program implemented under the SVPA is inadequate to provide a "cure" and, therefore, is punitive "as applied." As we consider this argument, it is important to note that Johnson and Collins only have standing to assert constitutional infirmities in the program as applied to them; they lack standing to assert how the program impacts others. As we explained in *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 110 P.3d 438 (2005):

" 'A party has standing to challenge constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of [the] statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations.' " 279 Kan. at 508 (quoting *Ulster County Court v. Allen*, 442 U.S. 140, 154-55, 60 L. Ed. 2d 777, 99 S. Ct. 2213 [1979]).

Consequently, the issue framed by Johnson and Collins must be focused on whether the SVPA is inadequate to "cure" Johnson and Collins.

Synthesizing these general rules into a statement of the issue before us, we must determine whether, in light of their admitted failure to comply with the program because of their personal disagreement with the regimen, Johnson and Collins have stated a claim that either (1) the conditions of their confinement are "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience" (*Lewis*, 523 U.S. at 848 n.8; see also

*Levier*, 209 Kan. at 451), or (2) there is continuing mistreatment of a constitutional stature (*Bankes*, 265 Kan. at 349).

## Shocking Treatment?

As to the first alternative of establishing a due process violation, the Supreme Court has explained:

"[T]he threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. That judgment may be informed by a history of liberty protection, but it necessarily reflects an understanding of traditional executive behavior, of contemporary practice, and of the standards of blame generally applied to them." *Lewis*, 523 U.S. at 847 n.8.

The Court further observed that the context of the executive action determines the standard against which the action would be measured; in particular, the standard varies based on whether there is the opportunity for deliberation. In *Lewis*, the issue was raised in the context of a federal claim pursuant to 42 U.S.C. § 1983 (which we do not have in the present case) arising from a high-speed chase initiated by law enforcement officers. In that context, the United States Supreme Court held that because a high-speed chase requires an immediate response from personnel, meaning there is no opportunity for deliberation, there can be no liability without an "intent to harm suspects physically or to worsen their legal plight." *Lewis*, 523 U.S. at 854. However, this standard is "sensibly employed only when actual deliberation is practical." *Lewis*, 523 U.S. at 851.

The Supreme Court contrasted that situation to one more similar to that in this case, *i.e.*, "the custodial situation of a prison, [in which] forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare." *Lewis*, 523 U.S. at 851. In that context, there is "time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Lewis*, 523 U.S. at 853.

Hence, in this setting, the indifference analysis must focus on the challenged abuse of power by officials in allegedly denying Johnson and Collins the treatment regimen that was statutorily mandated. See *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002). Here, the SPTP personnel were compelled to carry out a prescribed course of sex offender treatment, and if they were indifferent to that statutory obligation, the failure to act could be deemed shocking.

However, there is nothing in the record establishing that the failure to apply the program to Johnson and Collins is the result of indifference by SPTP personnel; rather it is because Johnson and Collins have refused to fully comply with the treatment program, stating they disagree with the regimen. In other words, there is no allegation that "shocks the conscience." See *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005) (in order to shock the conscience, conduct must at the very least be "extreme and egregious"); *Pers. Restraint of Dyer*, 164 Wash. 2d 274, 189 P.3d 759 (2008) (holding that repeated denials of parole did not shock the conscience, and, thus, did not violate inmate's substantive due process rights; inmate was sex offender who had been ineligible for treatment because he would not take responsibility for crimes).

## Continuing Mistreatment of Constitutional Stature?

Alternatively, the Petitioners can establish a due process violation by showing they have suffered continuing mistreatment of a constitutional stature. However, the parties disagree regarding the standard that Johnson and Collins would have to meet to establish that the SPTP as applied to them was unconstitutional. Indeed, the standard has not been established by the United States Supreme Court and has been a subject of debate by legal analysts. See, *e.g.*, *Seling v. Young*, 531 U.S. 250, 266, 148 L. Ed. 2d 734, 121 S. Ct. 727 (2001) (explicitly stating issue of standard not before Court in case dealing with Washington's sexually violent predator commitment scheme); *Hendricks*, 521 U.S. 346 (stating that treatment may be an "ancillary goal" of the civil commitment of sex offenders and not specifying standard for testing adequacy of regimen); *Youngberg v. Romeo*, 457 U.S. 307, 73 L. Ed. 2d 28, 102 S. Ct. 2452

(1982) (standard discussed in analogous but distinguishable context of developmentally disabled person with profound disability); *Jackson v. Indiana*, 406 U.S. 715, 738, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972) (standard discussed in analogous but distinguishable context of whether State may indefinitely confine criminal defendant who is mentally incompetent to stand trial); see also Lieb & Nelson, *Treatment Programs for Sexually Violent Predators—A Review of States*, 2 The Sexual Predator: Legal Issues, Clinical Issues, Special Populations, p. 5-1 (Schlank ed. 1999) (discussing uncertainty of standard in wake of *Hendricks*); Smith, *The Constitutionality of Civil Commitment and the Requirement of Adequate Treatment*, 49 B.C. L. Rev. 1383, 1384 (Nov. 2008) (suggesting that "[w]ithout adequate treatment providing a path to an individual's potential release, civil commitment becomes state-imposed criminal punishment"); Pearce, *Civilly Committing Criminals: An Analysis of the Expressive Function of Nebraska's "Dangerous Sex Offender" Commitment Procedure*, 85 Neb. L. Rev. 575, 577 (2007) (arguing that "the civil commitment of convicted sex offenders can, under certain circumstances, distort the interrelationship between criminal responsibility and psychological impairment that underlies the basic institutions of criminal justice and civil commitment in the United States"); Note, *The Newly Found "Compassion" for Sexually Violent Predators: Civil Commitment and the Right to Treatment in the Wake of Kansas v. Hendricks*, 32 Ga. L. Rev. 1261 (1998) (discussing *Hendricks* and lower courts' application).

In the wake of this lack of direction from the Supreme Court, lower courts have understandably developed their own frameworks for evaluating the constitutionality of civil commitment programs and varying standards have developed. See, *e.g.*, *Allison v. Snyder*, 332 F.3d 1076, 1081 (7th Cir. 2003) (applying *Youngberg* and holding [a] committed individuals are entitled to some treatment, and [b] what that treatment entails must be decided by mental health professionals); *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (holding that due process requires that civilly committed persons be provided "a realistic opportunity to be cured or improve the mental condition for which they were confined"); *Ohlinger v. Watson*, 652 F.2d 775, 777-78 (9th Cir. 1980) (stating civilly com-

mitted persons are entitled to mental health treatment that gives them a realistic opportunity to be cured and released; standard is one only required to provide a " 'reasonable level of treatment based upon a reasonable cost and time basis' "); *Cross v. Harris,* 418 F.2d 1095, 1107 (D.C. Cir. 1969) (due process commands that conditions and duration of confinement bear some reasonable relation to its civil purpose—treatment—without which incapacitation serves as mere preventive detention, "a warehousing operation for social misfits").

In the present case, the district court applied a standard of whether the treatment fell within the range of treatment recognized by reasonable professionals. Johnson and Collins suggest that, if this is the standard to be applied, a question of fact exists regarding whether professionals agree with the SPTP regimen, and this question of fact entitles them to a full hearing. Moreover, they seek a more exacting standard that would essentially guarantee eventual release from the program, or a "cure."

Nevertheless, this case turns on a narrower issue because, as the State points out, even if the exacting standard is required, Johnson and Collins could not satisfy their burden of proving the program failed to meet the standard as applied to them. The State's argument is correct that Johnson's and Collins' noncompliance with the program hinders the ability to ascertain whether the SPTP, as applied to them, has been or will be effective. And this is true regardless of the level of treatment required—adequate, minimal, exacting, or some other standard. In other words, Johnson and Collins cannot establish that the program as applied to them would not achieve the goal of the SPTP.

In essence, what the Petitioners ask us to consider is the hypothetical question of whether the program would fail to provide constitutionally adequate treatment *if* they complied with the treatment program. Answering the hypothetical question of whether the SPTP would cure the Petitioners if they were to comply would require an advisory opinion, and in the context of an action pursuant to K.S.A. 60-1501 courts are constitutionally prohibited from providing purely advisory opinions. See *Shipe v. Public Wholesale Water Supply Dist. No. 25,* 289 Kan. 160, 210 P.3d 105 (2009);

*State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 897, 179 P.3d 366 (2008).

Yet, mere noncompliance does not always prohibit bringing an "as applied" attack on the constitutional adequacy of a treatment program. Indeed, if treatment was so lacking that it could be deemed the personnel were indifferent or the requirements of the program were otherwise egregious and shocking, a refusal to participate would not bar relief. In addition, if noncompliance was minimal, disputed, or alleged to be of a nature as to not interfere with the treatment regimen, a petition could not be dismissed as a matter of law. Here, however, the treatment—or lack thereof—is not shocking to the conscience. Johnson and Collins merely disagree with the treatment regimen, and mere disagreement with reasonable and prescribed treatment does not establish a constitutional deprivation. See *Allison v. Snyder*, 332 F.3d 1076, 1080 (7th Cir. 2003).

In summary, to establish a claim entitling relief, Johnson and Collins must be able to show the lack of efficacy of the program as applied to each of them. Because of their noncompliance—noncompliance that is based on personal disagreement— that progress cannot be measured, nor can it be determined if Johnson and Collins would be able to successfully advance in the program. Moreover, the Petitioners have admitted to their noncompliance, making the fact uncontrovertible and subject to determination without further evidentiary hearing, and the noncompliance is not based on a legally justifiable basis such as shocking treatment. Because Johnson and Collins cannot establish the program is ineffective as applied to them, the uncontrovertible facts establish, as a matter of law, that there is no cause for granting the writ of habeas corpus. The district court correctly dismissed the K.S.A. 60-1501 petition.

Affirmed.