NOT DESIGNATED FOR PUBLICATION

No. 121,867

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JORDAN C. MCCLINTICK,
*Appellant*,

v.

MARTY SAUERS, Warden,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; CAREY L. HIPP, judge. Opinion filed May 15, 2020. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Robert E. Wasinger*, legal counsel, of Ellsworth Correctional Facility, for appellee.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM: Jordan McClintick, a prisoner at Ellsworth Correctional Facility, appeals the district court's dismissal of his habeas corpus petition filed under K.S.A. 2019 Supp. 60-1501. McClintick filed the action after he received a disciplinary report for violating a prison rule prohibiting drunkenness, intoxication, or being in a chemically induced state of altered consciousness. He sought administrative relief but failed. He then sought to correct the punishment through filing this petition. The district court denied him any relief.

1

To us, McClintick raises two arguments:

- The district court erred because his sanctions violated constitutionally protected liberty interests; and
- his right to due process was violated during his disciplinary hearing.

Our review of the record reveals that his allegations of protected liberty interests fail because the law is settled against him. And the record does not support his claim of a due process violation. Thus, we affirm the district court.

*Observations lead to his discipline.*

In November 2018, correction officers found McClintick fully clothed, seated in a bathroom stall, weaving back and forth. He was talking incoherently and refused to open the door. After some more requests and a direct order, McClintick stepped out, staggering. He appeared off balance. He was "unsteady and on edge, talking constantly without making any sense."

One officer wanted to send McClintick to the Captain's office in a wheelchair, but McClintick became argumentative, so he was escorted. The Captain found McClintick could not be quiet and had impaired coordination and bloodshot eyes. The nurse examined McClintick and observed he could not sit still or stop talking. His pupils were dilated and slow to react. His eyes were bloodshot and he had tremors in his hands. There was nothing in McClintick's medical history to account for these irregularities. The nurse noted McClintick had some anxiety, but he did not take any medication.

Based on this incident, a corrections officer filed a disciplinary report against McClintick, stating he had violated K.A.R. 44-12-311. The regulation prohibits inmates

from being in a condition of drunkenness, intoxication, or a chemically induced state of altered consciousness.

*Because of McClintick's allegations, we recount the details of his disciplinary hearing and administrative remedies.*

Before McClintick's disciplinary hearing, he prepared key points for his defense and a written presentation, which included seven listed witnesses, an opening statement, a list of questions and expected answers for each witness, a list of exhibits, and a closing argument.

At his hearing, one of his witnesses—the correctional officer who performed the strip search on McClintick when he came out of the stall—testified he did not believe McClintick was in an altered state. McClintick's remaining witnesses submitted written offers of proof, which were accepted by the hearing officer. The offers of proof stated that McClintick had a generalized anxiety disorder, his job as a welder could have caused his eyes to be red, he collided with another inmate which could have caused him to "walk funny," and he normally talked fast and moved around a lot.

The offers of proof also suggested McClintick seemed to be under much stress, was hard to understand sometimes, but went to work every day and did a good job. Two of the witnesses in their offers of proof showed they did not believe McClintick was using drugs or was under the influence. The hearing officer noted that none of the individuals who provided offers of proof was present or had direct knowledge of the incident.

Three other witnesses—the corrections officer who discovered McClintick, the Captain, and the nurse—testified consistently with the information in the disciplinary report and as detailed above. McClintick cross-examined each one of them at his hearing.

The hearing officer noted McClintick's urinalysis was negative for the limited number of drugs for which he was tested. Even so, the hearing officer found a preponderance of the evidence showed it was more likely true than not that McClintick had violated K.A.R. 44-12-311 by being in a chemically caused state of alternate consciousness. The hearing officer based this conclusion on:

- The written disciplinary report;
- the testimony of the corrections officer who found McClintick in the stall;
- the testimony of the Captain who assessed McClintick; and
- the clinic nurse's testimony.

McClintick received a sanction of 13 days' segregation and 45 days' restriction. This was approved by the Warden.

In his disciplinary appeal to the Secretary, McClintick claimed he was denied the right to ask a question of the corrections officer who found him in the stall. He also claimed he was denied the right to ask another corrections officer a different question on cross-examination. McClintick claimed he was not allowed to present a defense. A designee of the Secretary found substantial compliance with department and facility standards and procedures, determined that the hearing officer's decision was based on some evidence, and approved the decision.

*After holding a hearing, the district court denied any relief.*

In his petition for relief under K.S.A. 60-1501, McClintick alleged due process violations and violations of constitutionally protected interests arising from his sanctions. The Warden moved to dismiss McClintick's petition, citing McClintick's failure to allege shocking and intolerable conduct or continuing mistreatment of a constitutional stature.

4

The Warden argued that McClintick failed to show a constitutional deprivation that would require proceeding under a 60-1501 petition.

The district court heard the Warden's motion to dismiss and granted it a few days later. The court found:

> "Despite Mr. McClintick's claims, brief segregation, restricted privileges, withholding of unearned good time credit, loss of private industry employment and loss of family visitation do not implicate a constitutionally protected liberty interest."

The district court also found that the evidence supported the conclusions reached by the disciplinary authority.

*We consider the arguments from both parties.*

McClintick claims that the district court erred in summarily dismissing his petition. He claims his resulting disciplinary segregation, his loss of private industry employment, and his loss of good-time credits are losses that implicate protected liberty interests. McClintick also contends his due process rights were violated during his disciplinary hearing because he was not allowed to cross-examine or call witnesses on his behalf. He argues the district court should be reversed and his case remanded for an evidentiary hearing. For his part, the Warden contends that McClintick failed to show he suffered a constitutional deprivation and argues there is no basis to proceed with this 60-1501 petition. The Warden asks us to affirm the district court.

*We state the rules we must follow.*

The law related to habeas corpus relief for prisoners is well established. To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must

allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). If, on the face of the petition, it can be established that petitioner has no right to relief, or if, from undisputed facts, or from incontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists, then summary dismissal is proper. 289 Kan. at 648-49; see K.S.A. 2019 Supp. 60-1503(a).

This court exercises de novo review of a summary dismissal. *Johnson*, 289 Kan. at 649.

*We see no constitutionally protected liberty interests lost here.*

McClintick raises his disciplinary segregation, his loss of private industry employment, and his loss of good-time credits as violations of his protected liberty interests. The cases are all against him on these claims. We address them in that order.

*Segregation*

McClintick raised his 13-day segregation sanction as an issue in his brief. But he concedes that disciplinary segregation does not rise to the level of a constitutionally protected liberty interest. A prisoner has no protected liberty interest in remaining in the general prison population. See *Sandin v. Conner*, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); *Murphy v. Nelson*, 260 Kan. 589, Syl. ¶ 9, 921 P.2d 1225 (1996). His brief 13-day segregation does not raise any serious constitutional questions. We move on to his loss of private employment.

*Private industry employment*

We have no doubt that McClintick's loss of his welding job was a serious economic blow to this prisoner. His $13 an hour wage is far higher than what he could make routinely in prison. But, again, the cases are against him on this point. An inmate does not have a constitutionally protected interest in employment. *Stansbury v. Hannigan*, 265 Kan. 404, 421, 960 P.2d 227 (1998). Likewise, McClintick had no constitutional guarantee to this welding job. Its loss is not the loss of a protected liberty interest.

He claims the loss of his welding job resembles a fine, but he offers us no support for his proposition. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority resembles failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). We now examine his claims about his loss of good-time credits.

*Good-time credits*

McClintick claims he has lost a percentage of his good-time credits. Our review of the record does not support his claim. But we first review the law that applies to good-time credits.

Under Kansas law there is a difference between good-time credits earned—and then later forfeited—and credits that are withheld. *Gilmore v. McKune*, 22 Kan. App. 2d 167, 169-70, 915 P.2d 779 (1995). When good-time credits are withheld, they have not been earned. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 628, 24 P.3d 128 (2001). The withholding of good-time credits does not constitute a deprivation of a constitutionally protected liberty interest. *Ramirez v. State*, 23 Kan. App. 2d 445, 447, 931 P.2d 1265 (1997).

7

Again, the cases are against McClintick on this point. He did not lose any earned good-time credit. The record shows he had 31 good-time credits available during the award period from October 23, 2018, to February 23, 2019. He was awarded 15 credits for the period, but 16 credits were withheld because of his November 2018 disciplinary conviction. No good-time credits were forfeited.

We hold the district court did not err in dismissing McClintick's petition, citing his failure to show the deprivation of a constitutionally protected interest.

*We find no due process violation.*

McClintick claims he was denied due process when the hearing officer accepted a mental health professional's testimony as true without allowing him to call her as a witness to provide evidence that could have caused him to be found not guilty. But we must remember the venue of this hearing—a prison.

Generally, because institutional needs and objectives must be balanced against the rights of the inmate in a prison disciplinary proceeding, "'the full panoply of rights due a defendant in [criminal] proceedings does not apply.'" *Hogue v. Bruce*, 279 Kan. 848, 851, 113 P.3d 234 (2005). Even so, an inmate generally has the right in a prison disciplinary proceeding to:

- Be present at the hearing;
- receive an impartial hearing;
- receive written notice of the charges sufficient to prepare a defense;
- receive a written statement of any findings on the evidence and any reasons for imposing the discipline;
- call and confront witnesses; and

8

- present documentary evidence. K.A.R. 44-13-101(c).

The Due Process Clause of the United States Constitution prevents a person from being deprived of a significant interest in life, liberty, or property without due process of law. *Hudson v. State*, 273 Kan. 251, 259, 42 P.3d 150 (2002). Whether due process has been afforded is a question of law over which this court exercises unlimited review. *Johnson*, 289 Kan. at 649. In the context of prison disciplinary proceedings, the threshold inquiry is whether the prisoner has been deprived of a significant interest deserving procedural due process protection. *Hogue*, 279 Kan. at 850-51. Only if those rights are implicated must the court determine "the extent and nature of the process which is due." 279 Kan. at 851.

McClintick contends his case is analogous to *Johnson v. Roberts*, No. 114,162, 2016 WL 2810212 (Kan. App. 2016) (unpublished opinion), because Johnson was also denied the right to call witnesses in his disciplinary hearing. The *Johnson* panel remanded the case with directions for the district court to enter judgment in favor of Johnson and to order the Secretary of Corrections to set aside the disciplinary decision entered against him and hold a new hearing consistent with principles of due process. 2016 WL 2810212, at *1.

But there are significant differences between the two cases. Johnson was deprived of a significant interest. And the record does not support McClintick's claim that he was prevented from calling Cranston, the mental health professional, to testify at his hearing, so his reliance on *Johnson* is misplaced. McClintick submitted a written request for Cranston to testify at his disciplinary hearing. In this request, he stated she was willing to testify that he "suffer[s] from what is called 'General Anxiety Disorder.'" And we note that the box on McClintick's request form disapproving his request to call this witness was not checked.

And we also note that McClintick did not list Cranston as one of his seven witnesses he planned to call at his hearing. Even so, he included her in his scripted questions:

"Ms. Crans[t]on:
"[Q]- could [you] please tell the court what I [suffer] from as a mental disorder?
"[A]- You suffer from what is called' [*sic*] General Anxiety Disorder[.']"

McClintick also included as an exhibit a note with his diagnosis, which he claimed was from Cranston. Cranston did not testify at the hearing, but the hearing report reads:

"AN OFFER OF PROOF WAS [ACCEPTED] FROM BEHAVIORAL HEALTH CRANSTON WHO OFFENDER MCCLINTICK HAD CALLED AS A WITNESS. HIS REQUEST STATED THAT SHE WOULD SAY HE HAS BEEN DIAGNOSED WITH GENERAL ANXIETY DISORDER. THIS IS BEING [ACCEPTED] AS WHAT SHE WOULD TESTIFY TO."

The record shows McClintick requested that Cranston testify about his diagnosis and she was willing to do so. But he did not include her on his list of witnesses. The one question he planned to ask her was about his diagnosis, and her offer of proof on his diagnosis was accepted by the hearing officer. McClintick does not explain what additional evidence she would have provided that could have affected the verdict at his disciplinary hearing.

McClintick claims he was prevented by the hearing officer from calling Cranston as a witness and the hearing officer did not follow guidelines to explain why McClintick was not allowed to call Cranston as a witness. But nothing in the record supports these claims. Neither his request for Cranston to appear as a witness, nor any of his other witness request forms, show they were denied.

The burden is on the party making a claim to designate a record sufficient to present its points to the appellate court and to establish its claims. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

McClintick fails to show us his right to due process was violated.

*The evidence supports his discipline.*

A challenge to the sufficiency of the evidence in a prison disciplinary proceeding is reviewed for "'*some evidence*'" to support the correctional tribunal. (Emphasis added.) *May v. Cline*, 304 Kan. 671, 674, 372 P.3d 1242 (2016). Determining whether this standard is satisfied does not require the reviewing court to examine the entire record, make an independent assessment of witness credibility, or reweigh the evidence. The relevant question is whether there is any evidence in the record to support the conclusion reached by the disciplinary authority. *May*, 304 Kan. at 674.

The testimony given by the three prison employees who directly discovered, observed, and assessed McClintick during the incident—including the medical professional—found he displayed behaviors consistent with an altered state of consciousness. These behaviors could not be explained by any medical condition or prescribed medication. The hearing officer found the negative UA was of limited value because it tested for only a few substances. The record shows there is evidence to support the conclusion reached by the disciplinary authority.

The court properly dismissed this petition.

Affirmed.