NOT DESIGNATED FOR PUBLICATION

No. 121,528

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KING PHILLIP AMMAN REU-EL,
*Appellant*,

v.

DAN SCHNURR,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed July 24, 2020. Affirmed.

*King Phillip Amman Reu-El*, appellant pro se.

*Jon D. Graves*, legal counsel, Kansas Department of Corrections, for appellee.

Before STANDRIDGE, P.J., HILL and ATCHESON, JJ.

PER CURIAM: This is an appeal of the district court's dismissal of a habeas corpus petition filed by King Phillip Amman Reu-El, a prisoner at the Hutchinson Correctional Facility. Finding no errors, we affirm the court's dismissal of the petition.

*A court changes a man's name and he demands his release from prison.*

Reu-El filed a 96-page petition under K.S.A. 60-1501 against Warden Dan Schnurr in Reno County District Court. Among the many statements in the rambling

1

document, he claims the Kansas Department of Corrections was detaining him unlawfully because it failed to fully honor a journal entry granting his petition to change his name. He claimed he was unlawfully residing in Reno County as a "'Moorish Hostage.'"

Reu-El contended that the KDOC's description of him as "Black" or "African American" was against his religion and compared it to slavery, and he argued his confinement was thus illegal and unconstitutional. Reu-El also challenged Kansas' jurisdiction to confine him at the Hutchinson Correctional Facility. He suggested his detention at that facility was evidence of the State's failure to give full faith and credit to the journal entry granting his petition to change his name. Again, he argued that the use of the physical description of "Black" on his face sheet and as his race was an unconstitutional slave name. Reu-El explained that the only way the State could have jurisdiction over him was to prove that slavery still exists.

Some background information provides a context to decide this matter. In January 2015, the Shawnee County District Court had granted Phillip Delbert Cheatham Jr.'s request to change his name to King Phillip Amman Reu-El. In so doing, the court found he was a resident of Shawnee County, Kansas, for at least 60 days before filing his petition, and he complied with all notice and publication requirements. The court was "satisfied as to the truth of the allegations contained in the Petition" and found there was reasonable cause for Cheatham to change his name. The district court made no other findings.

Then, in March 2015, the Shawnee County District Court sentenced Reu-El to prison for his convictions of one count of attempted first-degree murder and three counts of first-degree or premeditated murder. That is why he is in the Hutchinson Correctional Facility.

2

Schnurr moved for a more definite statement and requested that Reu-El show the administrative remedies he exhausted, provide the factual and legal basis for his claims, identify the respondent for each of his claims, and specify the relief sought. Schnurr said he could not effectively respond to Reu-El's petition until Reu-El answered these questions.

Reu-El responded that the State did not have jurisdiction to hold his body or to identify him as, e.g., "Black," because that description "deludes to slavery." Reu-El also claimed, "There [was] no need for [him] to prove or show any so-called exhaustion of administrative remedy in order to establish the above and foregoing violations." Reu-El also argued that his petition—the "World Habeas Corpus," or WHC—was written in plain English.

The court held a preliminary hearing at which Reu-El appeared. He told the court he wanted to be released. Reu-El claimed that when the Shawnee County District Court granted his request to change his name, it adopted all of his statements in his petition, which meant it found the State did not have jurisdiction to hold his body in custody. After hearing Reu-El's explanation, the court found that his name change did not affect the criminal matter pending against him at the time of his name change. It concluded Reu-El failed to state a claim for which relief could be granted and dismissed his 60-1501 petition. Reu-El appealed.

To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary

3

dismissal is proper. 289 Kan. at 648-49; see K.S.A. 2019 Supp. 60-1503(a). An appellate court exercises de novo review of a summary dismissal. 289 Kan. at 649.

In his appellate brief, Reu-El concedes that the Department of Corrections has used his new name consistently as of October 2015. But his complaint appears to be related to the Department's inability or unwillingness to change his race from "Black" to "Human." He argues the district court erred by dismissing his motion.

*We see no reversible error here.*

Like the district court, we fail to see how a name change can in any way affect this man's murder conviction. We see no reversible errors in this record.

But Schnurr raises another point that must be addressed. Schnurr argues persuasively that Reu-El failed to establish that he exhausted administrative remedies before filing suit as required by the statute. Kansas statutes require prison inmates to exhaust administrative remedies before filing a civil claim against state actors and prison facilities. See K.S.A. 75-52,138. As for state law claims, K.S.A. 75-52,138 requires the inmate to establish that he or she exhausted available administrative remedies within his or her original petition. *Sperry v. McKune*, 305 Kan. 469, 482-83, 384 P.3d 1003 (2016).

Whether a party is required to or has failed to exhaust administrative remedies is a question of law over which the appellate court's review is unlimited. *Consumer Law Associates v. Stork*, 47 Kan. App. 2d 208, 213, 276 P.3d 226 (2012). A review of the record shows Reu-El did not claim in his petition that he exhausted administrative remedies before he filed his 60-1501 petition. He also did not attach any documentation to his petition to establish that he met this burden. Moreover, when given the opportunity to respond to Schnurr's request that he establish he exhausted his administrative remedies, Reu-El claimed—contrary to Kansas law—"There [was] no need for [him] to prove or

4

show any so-called exhaustion of administrative remedy. . . ." But failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

Based on Reu-El's claim that he did not have to prove he exhausted his administrative remedies, and the lack of documentation thereof in his petition, the district court could have dismissed his petition on that ground.

The district court reached the correct result. We affirm the district court's dismissal of Reu-El's petition under K.S.A. 60-1501.

Affirmed.