NOT DESIGNATED FOR PUBLICATION

No. 127,107

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEVIN T. DAVIS,
*Appellant*,

v.

GLORIA GEITHER, WARDEN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; CLINTON LEE, judge. Submitted without oral argument. Opinion filed December 27, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Chadayne C. Walker*, legal counsel, Kansas Department of Corrections, for appellee.

Before WARNER, P.J., HILL and COBLE, JJ.

PER CURIAM: Kevin Davis, an inmate at the Lansing Correctional Facility, filed a petition under K.S.A. 60-1501, claiming that policies at the facility's law library unconstitutionally restricted his access to the courts and violated his right to equal protection under the law. The district court held a nonevidentiary hearing on Davis' claims but ultimately denied his requests for relief. After carefully reviewing the record and the parties' arguments, we affirm the district court's decision.

1

FACTUAL AND PROCEDURAL BACKGROUND

In August 2022, Davis filed a petition under K.S.A. 60-1501, challenging several recently adopted policies in the law library at Lansing Correctional Facility (LCF). Davis, who is housed in a new medium-security building at LCF, complained that these policies unlawfully restricted his access to the law library in three primary ways:

- Medium-security inmates like Davis are only allowed to access the law library on three of the five days the library is open each week for up to three hours at a time, for a total of nine hours per week. Davis asserted that minimum-security inmates who lived in a different building were able to access the library more often. He also asserted that before the new medium-security building was built, inmates in medium security were afforded the same access to the library as people in minimum security.

- The law library no longer provided word-processing software (like Microsoft Word) on computers. Davis alleged that he was required to use a typewriter in the library to compose any court filings or purchase a typewriter from the canteen.

- In order to print research or materials from the law library, an inmate was required to purchase a "copy ticket" for $2. The copy ticket allowed someone to print 20 single-sided pages or 10 double-sided pages. Davis alleged that this cost was exorbitant because inmates could purchase a 100-page ream of paper from the canteen for $2. Davis asserted that the library should allow the inmates to use their own paper to print and should not charge people if they do so.

Davis asserted that these policies unconstitutionally restricted his access to the courts because they made it difficult for him to litigate a separate habeas case that he had filed in Sedgwick County. Davis requested an injunction ordering the prison to allow him

to have access to the law library whenever the library was open, use word processing, and use the paper from the canteen for printing at no additional cost.

The district court issued a writ of habeas corpus and ordered the prison to respond. In its answer, the prison requested summary dismissal of Davis' petition, arguing that he did not have standing since he had not shown that these policies caused him an actual injury. And even if he established an actual injury, the prison maintained, these policies did not violate his constitutional right to access the courts.

In response, Davis acknowledged that his other habeas case had since been stayed until the present litigation was resolved. But he maintained that he had suffered an actual injury because the policies made his legal research "very hard and time-consuming." Davis also refined the claims in his K.S.A. 60-1501 petition, abandoning his claim about word processing but alleging that the two other challenged policies also violated his constitutional right to equal protection of the law. Davis argued that these policies treated medium-security inmates like him differently from minimum-security inmates without a legitimate penological interest.

After a hearing, the district court concluded that Davis was not entitled to relief and dismissed his habeas-corpus petition. The court found that Davis did not have standing to bring his access-to-court claims because he had not shown that he suffered any actual injury due to the challenged policies. The court also found that Davis had not established an equal-protection violation. Davis appeals.

DISCUSSION

K.S.A. 60-1501 provides a vehicle for people detained in Kansas to challenge the conditions of their detention through a writ of habeas corpus when those conditions are particularly appalling. But not all petitions filed under this statute require a full trial to

3

consider the merits of the claims asserted. Rather, a petitioner's allegations "must be of shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). If the allegations do not meet this threshold, the petition will be dismissed. 289 Kan. at 648.

Davis challenges two policies involving the LCF law library: As a medium-security inmate, Davis may only access the library for nine hours per week (up to three hours a day, three days per week). And if Davis wants to print anything while in the law library, he must obtain a copy card from the library; this copy card costs $2 and allows him to print 20 single-sided pages (or 10 double-sided pages). Davis has alleged that these policies unconstitutionally restrict his access to the courts and violate his right to equal protection of the law.

The district court held a nonevidentiary hearing on Davis' claims but ultimately dismissed his petition, finding that his claims had not met this threshold requirement. Because the court based its decision on the parties' arguments and written filings, we review its ruling de novo. *Denney v. Norwood*, 315 Kan. 163, 175, 505 P.3d 730 (2022).

1. *Davis has not shown that he suffered any concrete denial or restriction on his access to the court system as a result of the challenged policies.*

The Due Process Clause of the Fourteenth Amendment guarantees that inmates who are being held in state facilities have "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). This guarantee includes the right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." 430 U.S. at 825. And as a corollary, state officials may not actively interfere with that right by stymying efforts to prepare or file legal documents. See *Lewis v. Casey*, 518 U.S. 343, 350, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). Thus, while there is not a constitutional guarantee of

4

access to prison law library in and of itself, for example, unreasonable and onerous restrictions on an inmate's access to the law library implicate the inmate's Fourteenth Amendment right.

Davis claims that the prison's policies concerning access and printing unconstitutionally restrict his access to the courts, in that they limited the time he could spend researching his legal claims and limited his ability to print his research. The district court found that Davis did not have standing to assert this claim, as he had not shown that either policy restricted his access to the courts in any meaningful way. In other words, the court found that Davis had not shown that he suffered an actual injury. We agree.

Kansas courts do not have the power to issue advisory opinions. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, Syl. ¶ 11, 179 P.3d 366 (2008). Courts only decide "real controversies" where our decisions have an effect that is "operative, final, and conclusive." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996). This means, among other things, that a person must have "standing"—that is, suffer an actual injury—to bring a cognizable claim in court. *Morrison*, 285 Kan. at 891-92.

In the context of a claim concerning court access, a person has standing if they demonstrate that "the alleged shortcomings in [a prison law] library . . . hindered [their] efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. Davis argues that his reduced access to the law library and printing costs "unfairly hindered his ability to produce legal documents and otherwise prepare for hearing" in an ongoing K.S.A. 60-1507 case. He asserts that he has suffered an actual injury under this standard because his ability to work on his case was "hindered"—as *Lewis* demands—because his efforts were slowed or made more difficult.

5

But an actual injury requires more than a belief that one's work on a case has been *affected* in some way. A person does not suffer an actual injury denying them of access to the courts when a law library policy is merely "subpar in some theoretical sense." 518 U.S. at 351. There must be some concrete harm that has been suffered:

"[A petitioner] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." 518 U.S. at 351.

While the United States Supreme Court has not provided additional guidance on the contours of what constitutes an actual injury, courts across the country generally agree that "inconvenience" or "delay alone is not enough." *Edwards v. Faust*, 407 Fed. Appx. 948, 950 (7th Cir. 2010) (unpublished opinion). For this reason, "restricted access to [a prison] law library" is not a "per se denial of access to the courts." *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978). Nor is a reasonable fee charged by a law library for copying or printing. *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980) (policy that charged $.10 per copy "does not support a claim of denial of access to the courts").

Instead, standing requires some "actual prejudice to pending or contemplated litigation," such as the "inability to meet a filing deadline or present a claim." *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023); *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). This may include "'having a case dismissed, being unable to file a complaint, [or] missing a court-imposed deadline.'" *Jackson*, 64 F.4th at 746.

Davis has not shown that the law library's policies had any concrete, adverse effect on his litigation. There is no evidence that Davis' K.S.A. 60-1507 motion in Sedgwick

6

County was dismissed or that he suffered any other concrete adverse consequence in that case because of the policies he challenges. He has not shown that his case has been impacted in any concrete way.

In short, Davis has not shown that he suffered any actual injury that deprived him of access to the court system with respect to either the hours he can access the library or the requirement of a copy card. He therefore does not have standing to assert that claim. We affirm the district court's dismissal of those challenges in Davis' petition.

2. *Davis has not established an equal-protection violation.*

Davis also claims that these two policies violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because they treat medium-security inmates differently from minimum-security inmates. Again, we are not persuaded by this assertion and affirm the district court's decision.

The Equal Protection Clause prohibits a State from "deny[ing] any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This constitutional mandate does not prevent States from "'treat[ing] different classes of persons in different ways.'" *Eisenstadt v. Baird*, 405 U.S. 438, 446-47, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972). Instead, it forbids "'different treatment . . . on the basis of criteria wholly unrelated to the objective'" of the challenged policy. 405 U.S. at 447. In other words, a differentiation "'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the [policy], so that all persons similarly circumstanced shall be treated alike.'" 405 U.S. at 447.

Courts use a three-step process when reviewing an equal-protection claim. First, we consider whether the challenged policy creates a classification resulting in different treatment of similarly situated individuals. When a statute treats "arguably

7

indistinguishable" individuals differently, then we must determine the appropriate level of scrutiny—whether rational-basis review, intermediate scrutiny, or strict scrutiny—to assess the classification by examining the nature of the regulated conduct. And finally, we analyze the statute under the appropriate scrutiny. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 315-16, 255 P.3d 1186 (2011).

Davis first argues that the practice of limiting him to nine hours of library access per week (three hours per day, three days per week) violates his right to equal protection, as minimum-security inmates may access the law library whenever it is open. He acknowledges that this policy need only survive rational-basis review. But he claims that there is no legitimate interest that justifies the difference in access. We disagree.

First, we note from the record that it is unclear whether there is indeed any difference in treatment between medium- and minimum-security inmates with regard to law library access. In its filings to the district court, LCF included a declaration from the law librarian discussing the policies Davis challenges. The librarian indicated that, contrary to Davis' assertions, the library is only open five (not seven) days per week. And "[d]epending upon where they are housed, LCF Residents can have access to the library two hours in the morning and one hour in the afternoon, meaning three hours a day." The librarian indicated that Davis and others who are housed the medium-security building "visit the library on Monday, Wednesday[,] and Friday." It appears that Davis is basing his challenge, in part, on a previous practice of the library under a different librarian that existed years ago—not the present policy. Thus, Davis has not shown that the current library policy treats minimum- and medium-security inmates differently.

But even if we read Davis' claim liberally to state that minimum-security inmates could visit the law library five days per week, while those housed in the medium-security building were limited to three, he still has not shown a violation of his right to equal protection. Physical security is one of the most important penological interests of a

prison. *Pell v. Procunier*, 417 U.S. 817, 823, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974). The prison has determined that it makes sense to restrict the days that people who live in the medium-security building are taken to the building containing the law library. Treating minimum- and medium-security inmates differently when it comes to physical access to the law library based on their different security classifications is rationally related to the prison's interest in safety of the prisoners and the prison personnel.

Davis' challenge to the $2 copy card suffers a similar fate. Again, Davis has not shown that minimum-security inmates are allowed to use paper purchased from the prison canteen to print or make copies at the library; the law librarian's declaration merely states that "[r]esidents who desire to have copies of legal materials or other documents are charged ten cents per copy." Davis' petition merely indicates that he believes that inmates at LCF should be able to use multipurpose paper bought at the prison canteen to print or make copies in the law library. It may have been that this was a practice that was permitted in the past and is no longer allowed. But Davis' discontent with the present policy does not raise a concern under the Equal Protection Clause.

Davis has not shown that LCF's current policy of requiring a copy card (and thus charging $.10 per copy) applies differently to minimum- and medium-security inmates. See *State v. Myers*, 62 Kan. App. 2d 149, 186, 509 P.3d 563 (person alleging a violation of his constitutional right to equal protection bears the burden of showing a violation), *rev. denied* 316 Kan. 762 (2022). Thus, his equal-protection claim fails.

The district court did not err when it dismissed Davis' K.S.A. 60-1501 petition.

Affirmed.