NOT DESIGNATED FOR PUBLICATION

No. 122,538

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRIAN MANIS,
*Appellant*,

v.

JOHNNIE GODDARD, et al.,
*Appellees*.


MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed October 23, 2020. Reversed and remanded with directions.

*Brian Manis*, appellant pro se.

*Joni Cole*, legal counsel, of El Dorado Correctional Facility, for appellees.


Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.


PER CURIAM: Brian Manis appeals the district court's summary dismissal of his K.S.A. 60-1501 petition. Manis argues the district court erred in finding he failed to exhaust his administrative remedies and in finding he failed to state a claim upon which relief could be granted. For the reasons stated below, we reverse and remand Manis' case to the district court for a hearing on the merits of Manis' petition.

1

In 1998, police found a woman who had been shot to death and appeared to have been sexually assaulted. The State charged Manis with first-degree murder and rape of the woman. Manis pled guilty to second-degree murder and, in return, the State dismissed the rape charge.

In 1999, Manis began serving his sentence at the Kansas Department of Corrections (KDOC). On admission, Manis was not managed as a sex offender. But in 2003, the director of the KDOC's Sex Offender Management Program approved a decision made by the KDOC's Sex Offender Override Panel (override committee) to manage Manis as a sex offender. In support of this decision, the override committee determined Manis' crime was sexually motivated based on the fact that, although the charge was dismissed, Manis originally was charged with rape. In 2005, Manis asked to be taken out of sex offender management; the override committee denied his request.

But in 2012, the override committee granted Manis an override and released him from sex offender management. According to the KDOC's Sex Offender Specialist Kimberly Coffin, that decision was based solely on the fact that the court ordered the KDOC to adopt a new sex offender classification procedure that comported with due process requirements. So it appears the decision was not based on Manis' crime, his behavior in prison, or his need for treatment.

Manis' override out of sex offender management lasted until May 2016, when Coffin notified Manis of the KDOC's intent to manage him as a sex offender per Internal Management Policy and Procedure (IMPP) 11-115A. Manis attended a due process hearing held to determine whether he should be managed as a sex offender. In support of its position that Manis should be managed as a sex offender, the KDOC introduced an affidavit from the prosecuting attorney attesting that Manis' crime was sexually

motivated. After the hearing, Coffin determined that Manis' crime was sexually motivated and ordered Manis to return to sex offender management. Manis appealed the decision by submitting an "inmate request to staff member" form (Form 9) to the prison warden, arguing the decision violated his statutory and constitutional rights. Manis received a letter from the classification administrator denying his request, stating: "[After your] due process hearing, . . . your override was withdrawn and you are now managed as a sex offender. The decision of the hearing officer is final and no appeal shall be allowed."

In a K.S.A. 60-1501 petition filed with the district court appealing this decision, Manis argued that the override committee violated his statutory and constitutional rights by removing his override and reclassifying him as a sex offender. In August 2017, the district court summarily dismissed Manis' petition, finding Manis failed to exhaust his administrative remedies before filing suit because Manis had not applied for an override as prescribed in IMPP 11-115A. Although unclear, it appears the district court incorrectly assumed that Manis needed to submit an override request directly to the override committee. The district court may have also taken issue with the specific form Manis submitted because the record shows Manis submitted Form 9 requests instead of the specific form referenced in IMPP 11-115A.

Manis filed a motion to alter or amend with the court, arguing he properly exhausted his administrative remedies as evidenced by the Form 9 requests he attached to his petition. In response, the district court ordered Respondents to submit the affidavit it relied on in determining Manis' crime was sexually motivated. Respondents provided the affidavit, which suggested that Manis entered a house uninvited and sexually assaulted his murder victim. The affidavit also included Manis' statement to police that he did not rape his victim but instead had consensual sex with her. After reviewing the affidavit, the court directed Manis to submit an override request—specifically referencing "Attachment

A" to IMPP 11-115A—and ordered Manis to report back to the court with the results of that request.

After receiving no update for four months, the district court filed a notice of its intent to dismiss the case based on Manis' failure to report the results of his renewed override request. This notice prompted responses from both parties. Manis argued that a renewed override request was unnecessary but still provided the district court with a copy of two new Form 9 requests, one which was submitted in January 2018 and the other submitted in April 2018. Manis also provided the district court with a copy of Coffin's response denying Manis' "Override Request seeking full relief form management as a sex offender," dated the same day as the district court's notice of intent to dismiss—June 14, 2018. Respondents provided the district court with an affidavit from Coffin detailing the procedural history of Manis' sex offender classification. Respondents maintained that because Manis' renewed override requests were denied, Manis' case was ripe for adjudication.

Ultimately, the district court denied Manis' motion to alter or amend. The district court again held that Manis had not properly exhausted his administrative remedies. Although acknowledging Manis twice filed Form 9 requests seeking reclassification, the court found Manis never filed a sex offender override request on the specific form referenced in IMPP 11-115A. And even if Manis had properly exhausted his administrative remedies, the district court went on to hold that Manis failed to state a claim upon which relief could be granted. Specifically, the district court rejected Manis' assertions that the 2012 override decision was permanent or that, once granted, an override could not be revoked. The district court also found that an inmate may be managed as a sex offender under IMPP 11-115A without being convicted of a sexual crime, that the prosecutor's affidavit supported Manis' reclassification as a sex offender, and that Manis was afforded due process after receiving a reclassification hearing.

ANALYSIS

Manis presents two claims of error on appeal. First, he argues the district court erred in finding he failed to exhaust his administrative remedies as required before filing a K.S.A. 60-1501 petition. Second, he argues the district court erred in finding his K.S.A. 60-1501 petition failed to state a claim upon which relief could be granted. We address each of Manis' arguments in turn.

1. *Summary dismissal: failure to exhaust administrative remedies*

An inmate is required to exhaust all administrative remedies before filing a civil action. See K.S.A. 75-52,138. An appellate court has unlimited review of a summary dismissal of a K.S.A. 60-1501 action. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009).

Under K.S.A. 75-5210(f) and K.S.A. 75-5251, the Secretary of Corrections is authorized to develop rules and regulations for the correctional institutions, including the policies and procedures set forth in the IMPP. See *Collier v. Nelson*, 25 Kan. App. 2d 582, 584, 966 P.2d 1117 (1998). Before November 2015, IMPP 11-115 governed the sex offender management. In November 2015, the Secretary of Corrections adopted IMPP 11-115A, which now governs the management of sex offenders in prison. This policy now defines a sex offender as one who "[h]as a charge for a sex crime, currently or in the past, and for which charge the prosecutor's affidavit is available; and who, after a due process hearing under this policy, is determined should be managed as a sex offender because the charged behavior was sexually motivated." IMPP 11-115A. "Once an offender has been identified as one to be managed as a sex offender, s/he must continue to be managed as a sex offender unless/until the offender receives an override from being managed as one." IMPP 11-115A(I)(C).

IMPP 11-115A(VI) outlines the override procedures. The most current version of the policy provides that an inmate managed as a sex offender must submit an override request by completing an override request form. That form must be completed by the inmate's unit counselor or assigned parole officer. And the request must contain the information prescribed in IMPP 11-115A(VI)(C)(2)(a)-(c). Once an inmate's request is submitted, it is reviewed "at the facility or parole office level, and by the warden/parole director or designee, and must be forwarded to the Director of Reentry." IMPP 11-115A(VI)(C)(3). The director then reviews the request to determine if it is "appropriate" under the IMPP provisions. IMPP 11-115A(VI)(C)(4). If appropriate, the director must gather any additional information necessary and place the request on the list for the next scheduled, monthly override committee meeting. Then the override panel either approves or disapproves the request. That decision is final and unappealable. IMPP 11-115A(VI)(C)(4)-(6). The inmate can, however, seek modification later by utilizing the override procedures outlined above. IMPP 11-115A(VII)(B)(6)(b).

In Respondents' motion to dismiss Manis' petition submitted to the district court, they argued that Manis failed to exhaust his administrative remedies in submitting the request to the facility classification administrator at the prison where he was housed instead of to the override committee as required by IMPP 11-115A:

"Petitioner had previously received an override and is familiar with the process. In support of his assertion that he applied for an override, he attached Form 9's and the response provided by the Classification Administrator at EDCF [El Dorado Correctional Facility], Marsha Bos. However, in reviewing the policy, it's very plain that this is not part of the override process, and that decision is not handled at the facility level. In order to prove he has fully exhausted his administrative remedies, Petitioner will need to apply for an override and receive a determination from the override panel as per policy."

Contrary to Respondents' argument, Manis followed the override procedures set forth in the IMPP. The policies set forth above reflect that when an inmate initiates an

override request, it the responsibility of the facility's unit counselor to complete the override request form and make a recommendation regarding whether it should be granted. See IMPP 11-115A(VI)(C)(2)(a)-(c). Once the facility's unit team counselor completes the form, the unit team counselor forwards the form to the facility's warden, who reviews it and then forwards it to the override director. The override director schedules it for an override committee meeting. IMPP 11-115A(VI)(C)(3). So Manis was not required to take any further action after initiating an override request to the facility's unit counselor. And Manis was not responsible for ensuring he "receive[d] a determination from the override panel as per policy," as the State argued.

Interestingly, Respondents offer a different argument on appeal to support its claim that Manis failed to properly exhaust his administrative remedies. Respondents now argue that Manis violated K.S.A. 75-52,138 because he did not exhaust his administrative remedies *before* filing suit. But Respondents never made that argument to the district court. Although Respondents filed additional motions after Manis notified the district court of the results of his renewed override requests, they still failed to raise timeliness as an issue. Generally, an argument raised on appeal for the first time is unpreserved and cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Although there are exceptions to this general rule, Respondents fail to acknowledge the fact that they did not raise the issue below and do not attempt to remedy this error by arguing that an exception applies to allow review of their unpreserved claim. But even if we overlook Respondents' failure in this regard, Respondents' untimely exhaustion argument is without merit.

In early May 2016, Manis was served with a notice advising him that the KDOC intended to manage him as a sex offender and that a due process hearing on the reclassification would be held on May 6, 2016. After the hearing, Coffin determined Manis should be managed as a sex offender. On May 11, 2016, Manis' unit team manager provided Manis with written documentation of Coffin's decision. This documentation

explained that the decision was final and no appeal would be allowed but that Manis could "seek modification of some or all of the decision through the override process."

On May 14, 2016—within 72 hours of receiving the written classification decision—Manis submitted a Form 9 directed to the prison warden. In the Form 9 request, Manis stated he was appealing the panel's classification decision under IMPP 11-106, which is the general policy dealing with classification of inmates and advises that challenges to classification decisions should be submitted on a Form 9. See IMPP 11-106(III)(B)(3) ("Within 72 hours after receiving a custody classification decision, the offender may appeal the decision to the Warden by submitting the appeal through the Unit Team Counselor on a Form-9."). Significant here, Manis also submitted a second document, in which it becomes clear that he is requesting modification of the classification decision through the override process. In this second document, Manis explained in detail the legal grounds upon which he relied in arguing an override was constitutionally required under the fact of his case. Ignoring the override component of Manis' submission, a KDOC classification administrator submitted a written letter to Manis on May 20, 2016, explaining that Manis was prohibited from appealing the decision of the classification panel. On June 7, 2016, Manis submitted the K.S.A. 60-1501 petition at issue in this appeal for filing with the district court.

Notably, Respondents do not reference the Form 9 submission and separate override request submitted by Manis to the prison warden on May 14, 2016, *before* Manis filed this cause of action. Coffin's affidavit similarly omits any reference to those requests. Instead, Respondents cite to only the Form 9 override requests submitted by Manis on January 9, 2018, and April 14, 2018, after Manis filed suit. Unlike the earlier request Manis filed before this cause of action, Respondents construed the later Form 9 submissions as requests to override of his sexual offender classification and denied them as such. And Respondents concede that the January 9, 2018 and April 14, 2018 Form 9 requests met IMPP 11-115A requirements for seeking an override. Nevertheless,

8

Respondents argue on appeal that these requests do not satisfy the exhaustion requirements because they were untimely. Notwithstanding the concession that the 2018 Form 9 requests would meet the IMPP 11-115A exhaustion requirements had they been timely filed, Respondents argue that Manis' 2016 requests, both on a Form 9 and a separate document, were insufficient to meet the IMPP 11-115A exhaustion requirements because he filed them on and in conjunction with a Form 9 template.

We are not persuaded by Respondents that Manis' 2016 requests were insufficient to meet the IMPP 11-115A requirements. True, Manis mistakenly utilized the general classification appeal form identified in IMPP 11-106 to challenge his classification decision. But it is clear from the second document, which he submitted in conjunction with the Form 9, that the substance of Manis' request was relief in the form of an override under IMPP 11-115A. And because the KDOC classification administrator ignored the request to modify the override decision component of Manis' submission by rejecting it solely on grounds that override committee decisions cannot be appealed, we necessarily conclude that Manis properly exhausted his administrative remedies in 2016 before filing suit. And even if he did not, the record shows that Respondents and other KDOC officials expressly accepted Manis' 2018 Form 9 requests as override requests, which he filed as directed by the district court. Manis should not be penalized for complying with the district court's order directing him to file a new override request, even if it was filed on a different form and filed after his suit was pending.

Although Manis did not follow the exact procedure required by IMPP 11-115A in that he submitted a different form and a separate written statement instead of using the form referenced in the policy, we find Manis sufficiently exhausted his administrative remedies; specifically, Manis submitted a request in 2016 seeking an override and was notified that no other administrative remedies were available.

2. *Due process*

Manis argues the district court erred in dismissing his K.S.A. 60-1501 petition for failing to state a claim. In reviewing a district court's order dismissing a petition for failure to state a claim upon which relief can be granted, an appellate court is required to accept the facts alleged by the petitioner as true. The court must determine whether the alleged facts and all their inferences state a claim, not only on the theories set forth by the petitioner, but on any possible theory. *Hill v. Simmons*, 33 Kan. App. 2d 318, 320, 101 P.3d 1286 (2004). "To avoid summary dismissal the allegations must be of a constitutional stature." *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

Manis alleges a denial of due process. The Due Process Clause under the Fifth and Fourteenth Amendments to the United States Constitution prevents a person from being deprived of a significant interest in life, liberty, or property without due process of law. *Hudson v. State*, 273 Kan. 251, 259, 42 P.3d 150 (2002). The issue of whether due process has been afforded is a question of law over which this court has unlimited review. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001). A determination of the validity of Manis' due process claim requires a two-step analysis. The first inquiry is whether the State has deprived Manis of life, liberty, or property. If there has been a deprivation through State action, the court next determines the extent and nature of the process which is due. *Hogue*, 279 Kan. at 850-51.

The Kansas Supreme Court's opinion in *Schuyler v. Roberts*, 285 Kan. 677, 175 P.3d 259 (2008), governs our analysis here. In *Schuyler*, the petitioner filed a petition for habeas corpus alleging that his classification as a sex offender—and his required participation in sex offender treatment as a result—deprived him of his constitutional right to due process. In order to determine whether his sex offender classification and his required participation in sex offender treatment rose to the level of shocking and

intolerable conduct or continuing mistreatment of a constitutional nature, the court utilized the "stigma plus" test.

> "To satisfy the 'stigma' element of the test, (1) Schuyler must set forth allegations which, if true, demonstrate that the prison authorities have characterized him in a way which is sufficiently derogatory so as to injure his reputation, and this characterization is capable of being proven false; and (2) he must allege that the characterization is false. To satisfy the 'plus' element of the test, Schuyler must allege that this mischaracterization has caused him to experience a governmentally imposed burden which has significantly altered his status as a matter of state law. [Citations omitted.]" *Schuyler*, 285 Kan. at 685-86.

Manis did not reference the stigma plus test in his habeas corpus petition. Still, Manis alleged that he was seeking relief for defamation of character. Manis also argued that although he received a hearing, his due process rights were violated because he was denied that ability to present witness testimony at that hearing and was not afforded an appeal from the override committee's decision. Although Manis did not detail exactly how derogatory his classification as sex offender was, we find—as the *Schuyler* court did—that the classification meets the stigma prong of the analysis.

First, it is clear that the State's classification of Manis as a sex offender is a statement that is derogatory enough to damage his reputation. "'We can hardly conceive of a state's action bearing more "stigmatizing consequences" than the labeling of a prison inmate as a sex offender.'" *Schuyler*, 285 Kan. at 686 (quoting *Neal v. Shimoda*, 131 F.3d 818, 829 [9th Cir. 1997]). Second, it may be possible for Manis to prove that he is not a sex offender. Manis apparently was labeled as a sex offender because he was charged with but not convicted of rape. IMPP 11-115A provides that inmates can be classified as sex offenders based on a prior criminal charge if the underlying criminal conduct at issue was sexually motivated. Specifically, to find that Manis was a sex offender based on the rape charge, the review panel had to have found that Manis "[h]as a charge for a sex

11

crime, currently or in the past, and for which charge the prosecutor's affidavit is available; and who, after a due process hearing under this policy, is determined should be managed as a sex offender because the charged behavior was sexually motivated." IMPP 11-115A.

The policy goes on to explain that "[i]n instances where there is no conviction of a sex offense, the offender is permitted to present evidence in regard to whether the behavior documented in the prosecutor's charging affidavit actually occurred, whether such behavior was sexually motivated, or both." IMPP 11-115A(VII)(B)(5)(d). Manis claims that he engaged in consensual sex with the victim. The State dismissed the rape charge as part of the plea agreement. In sum, Manis sets forth "allegations which, if true, demonstrate that the prison authorities have characterized him in a way which is sufficiently derogatory so as to injure his reputation, and this characterization is capable of being proven false," and he has alleged that the characterization is false. For this reason, we conclude he satisfies the "stigma" factor set forth in the *Schuyler* stigma plus standard. See *Schuyler*, 285 Kan. at 686.

With respect to the plus factor of the test, Manis makes allegations which, if proven, establish a mischaracterization which has caused him to experience a governmentally imposed burden which significantly alters his status as a matter of state law. Specifically, Manis was classified as a sex offender in accordance with IMPP 11-115A. Once classified, IMPP 11-115A(V)(B) requires that sex offender treatment be placed on a sex offender's inmate program plan. This program consists of "a curriculum that relies on a cognitive-behavioral approach, teaching strategies for avoiding sexual offending and related behaviors, with emphasis on skill-building activities to assist with cognitive, social, emotional and coping skills development, with a goal of increasing the value participants place on pro-social thoughts and choices." IMPP 11-115A(V)(B)(1). A sex offender also may have limited contact with minors. IMPP 11-115A(II)(C)(1). A sex offender is also subject to polygraph testing. IMPP 11-115A(V)(B)(3). A sex offender may not participate in the prison work release program until successful completion of the

sex offender program and treatment and further approval from the Sex Offender Specialist. IMPP 11-115A(II)(A)(3). It appears that the district court should have at least held a hearing to determine to what extent Manis is burdened by the sex offender label.

For the reasons stated above, we reverse and remand to allow the district court the opportunity to hear evidence and determine whether Manis has shown that he has a liberty interest under the stigma plus standard. If the district court finds that Manis does have a liberty interest in not being classified as a sex offender, the court should then proceed to determine whether Manis received the process he was due in protecting that liberty interest. In considering the procedural protection required, a court weighs:

"(1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail." *In re J.D.C.*, 284 Kan. 155, 166-67, 159 P.3d 974 (2007) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 [1976]).

The *Eldridge* test is a means to determine "[t]he type and quantity of procedural protection that must accompany a deprivation of a particular property right or liberty interest." *In re J.D.C.*, 284 Kan. at 166 (considering whether parent in child in need of care case entitled under Due Process Clause to confront child upon whose testimony termination of parental rights was based). We note that due process is not a technical concept with fixed content unrelated to time, place, and circumstances. Instead, its requirements are "'flexible and call[] for such procedural protections as the particular situation demands.'" *Eldridge*, 424 U.S. at 334. Utilizing the *Eldridge* test may be required in three areas of procedural due process rulings: (1) to determine whether an individual is entitled to a predeprivation hearing; (2) if a hearing is required, to decide the procedures to be employed at the hearing, e.g., an informal hearing versus a full adversarial process; and (3) if formal adversarial process is required, to determine the

13

standard of proof required to justify the deprivation. 3 Rotunda & Nowak, Treatise on Constitutional Law § 17.8(i) (5th ed. 2012).

As part of its analysis to determine whether Manis received the process he was due in protecting his liberty interest, we direct the district court to consider Manis' allegation that he did not have an opportunity to present witnesses. See IMPP 11-115A(VII)(B)(5)(d) ("[T]he offender is permitted to present evidence in regard to whether the behavior documented in the prosecutor's charging affidavit actually occurred, whether such behavior was sexually motivated, or both.").

We also direct the district court to consider other relevant subsections of IMPP 11-115A in deciding whether the override committee properly determined Manis could be reclassified as a sex offender after previously receiving an override out of the program in 2012. To that end, we acknowledge that IMPP 11-115A does not expressly address the procedural position presented here: whether a prior override can be revoked while serving the same sentence in the absence of postoverride conduct justifying the prisoner being managed as a sex offender. The policy does, however, expressly state:

> "Once an offender has been identified as one to be managed as a sex offender, s/he shall continue to be managed as a sex offender unless/until the offender receives an override from being managed as one.
> 1.  If an offender received an override from being managed as a sex offender during a previous incarceration, that override shall apply at the current admission, and the offender shall not be identified as a sex offender at admission, unless there has been behavior in the facility or in the community since the override that warrants removing the override." IMPP 11-115A(I)(C)(1).

This provision supports Manis' position that he could not be reclassified as a sex offender after receiving an override absent a change in his behavior in either the facility or the community.

CONCLUSION

Although imperfectly, Manis sufficiently exhausted his administrative remedies before filing his petition in the district court. His petition also adequately stated a claim for relief because it satisfied both elements of the stigma plus test. Accordingly, the district court erred in summarily dismissing Manis' petition. We reverse the district court's dismissal of Manis' petition and remand to allow the district court the opportunity to hear evidence and determine whether Manis has shown that he has a liberty interest under the stigma plus standard. If the district court finds that Manis does have a liberty interest in not being classified as a sex offender, the court should consider the factors in *Eldridge*, 424 U.S. at 335, to determine whether Manis received the process he was due. These factors include, but are not limited to

- whether Manis was deprived of an opportunity to present witnesses;
- whether Manis was deprived of an opportunity to present evidence that the behavior documented in the prosecutor's charging affidavit actually occurred and whether such behavior was sexually motivated; and
- whether the override committee properly determined Manis could be reclassified as a sex offender, after having previously received an override out of the program in 2012, in the absence of postoverride conduct justifying the reclassification given the standards set forth in IMPP 11-115A(I)(C)(1).

Reversed and remanded with directions.